176 So.2d 630 (1965)
BEST OIL COMPANY, Inc.
v.
PARISH COUNCIL OF the PARISH OF EAST BATON ROUGE.
No. 6407.
Court of Appeal of Louisiana, First Circuit.
May 24, 1965.
Rehearing Denied July 1, 1965.
Sylvia Roberts, of H. Alva Brumfield, Baton Rouge, for appellant.
*631 R. Gordon Kean, Jr., John V. Parker, Robert W. Smith, of Seale, Hayes, Smith & Baine, Victor A. Sachse, III, of Breazeale, Sachse & Wilson, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is an action by plaintiff-landowner, Best Oil Company, (sometimes hereinafter designated simply as "Best"), to recover compensation from defendant Parish Council of the Parish of East Baton Rouge (sometimes hereinafter designated merely as "Parish"), for lands allegedly expropriated for public purposes, namely, a drainage canal, without prior payment therefor. The Parish has also appealed the judgment of the trial court rejecting and dismissing its hereinafter mentioned third party demands.
In essence plaintiff's petition alleges defendant, without permission or the benefit of a deed to the area on which the canal is situated, went on appellant's premises, dug the drainage facility and piled dirt on the remainder of plaintiff's property thus causing damage to the streets and drainage system which had been installed and constructed on plaintiff's property.
Defendant answered appellant's petition admitting having dug a drainage facility on plaintiff's property which said work consisted of relocation of a natural drain known as Jones Creek. The defense tendered by appellee is that the right of way for said project was dedicated by plaintiff or its agents. In the alternative appellee maintains the public dedication of the right of way appearing on certain maps of record was ratified by appellant thus dispensing with the necessity of appellee's making payment therefor.
The Parish also filed a third party demand alternatively alleging acquisition of the disputed right of way by act of dedication from Robert E. McGill and Westdale Woods, Inc., who represented themselves in writing as owners of the property. As third party plaintiff, the Parish prays that if judgment be rendered against it, then and in that event judgment be rendered in its favor against said third party defendants.
The property on which the controversial canal is situated consists of a rectangular tract of land containing approximately six acres fronting on the north side of the Baton Rouge-Hammond Highway in Section 68, T-7-S, R-1-E, Greensburg Land District, East Baton Rouge Parish. Subject tract, purchased by plaintiff in 1956, lies between parallel side lines running in a northerly-southerly direction. The aforementioned highway, however, traverses the tract in an angular direction so that the sidelines are of unequal lengththe West line measuring 846.7 feet and the East line, 790.4 feet. The rear or northern line of the tract is for all practical purposes perpendicular to the two side lines. Jones Creek, a natural drain, traverses subject property commencing at the northwest corner and crosses the tract from east to west at an angle of approximately 45 degrees.
The evidence reveals that the Parish undertook the task of improving drainage in the vicinity of subject property by widening and/or deepening Jones Creek. Surveys revealed that to widen the existing creek would involve severing plaintiff's property as well as that of adjacent and adjoining owners whose lands were traversed by the creek in question. Because of this consideration, it was decided to dig a new canal along the rear or northern lines of the lands in the area and, for this purpose, the parish attempted to obtain rights-of-way from affected property owners. In the course of such preliminary undertakings, the parish caused a map to be prepared by its Engineer, L. J. Muse. Said map, dated May 16, 1957, showed an area of .933 acres across the back or northern end of plaintiff's property required as a right-of-way for the proposed drainage location. The area in question is irregular in form. It commences at a point on plaintiff's east property line 140 feet *632 south of the Northeast corner of appellant's property from whence its south line runs westerly parallel to the northern boundary of the entire tract, a distance of 187.16 feet at which point the south boundary of the right-of-way angles northerly and runs a distance of 145.89 feet to the western boundary of the six acre tract, said angulation being such that the western line of the right of way is 77.77 feet in length. The shape and dimensions of the area thus described in detail are significant in that they are shown as above indicated on all maps to which reference is hereinafter made. The lands lying within the boundaries shown is the area which appellant alleges was wrongfully taken. For brevity it will be hereinafter referred to as the "relocation area."
It also appears that in 1957, the Parish prepared a right-of-way agreement with the Muse map attached and submitted said document to appellant's President, H. Alva Brumfield, who declined to sign. So far as the record shows the proposed right-of-way agreement was never executed.
The ensuing circumstances culminating in this litigation will be set forth chronologically to facilitate a clearer understanding of the issues presented for resolution.
In July, 1957, plaintiff corporation, represented by its aforementioned president, granted to one Robert E. McGill an option to purchase the entire six acre tract, said right to purchase having been conveyed in consideration of the sum of $500.00 cash. Simultaneously for $500.00 cash, McGill granted an option to Mr. Brumfield, individually, for two lots to be taken from the front or southern portion of the six-acre tract, said lots being therein referred to as Lots "A and B" and having dimensions sustantially similar to Lots "A and B" designated on the hereinafter discussed maps showing a subdivision of the entire six-acre tract. Three days after purchasing the option from plaintiff, McGill conveyed same to Thomas R. Walker, President of the corporation known as Westdale Woods, Inc. From the record it appears that neither the option from plaintiff to McGill or the transfer thereof from McGill to Walker were placed of record or formally accepted within the time specified in the respective documents. Despite this circumstance, McGill commenced immediate preparations to develop the tract into a residential subdivision. It is undisputed he employed one Sam G. Dupree, Civil Engineer, to survey the property and draw a subdivision plan therefor.
Subsequently on October 22, 1957, appellant executed a sale with mortgage to Westdale Woods, Inc., conveying to said purchaser "Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14 of a proposed layout of a six (6) acre tract located in Section 68, Township 7 South, Range 1 East, Greensburg Land District of Louisiana as shown on the plot or plan prepared by Sam G. Dupree, Civil Engineer, dated Oct. 15, 1957." Attached to the foregoing transaction and paraphed for identification therewith was the map therein referred to as having been prepared by Dupree. Said map shows the original six-acre tract with a 50-foot street designated "Madeline Court" running through the approximate center of the plot northerly from the Baton Rouge-Hammond Highway and terminating near the rear of the property in a circular cul de sac or turnaround having a radius of 68 feet. Subject property (the hereinbefore mentioned "relocation area") is shown on said map as "unsubdivided." Said plat further shows eight lots laid out on the west side of the aforementioned street, the first or southernmost being designated Lot A and the remainder being denominated Lots 1 through 7, respectively. On the East side of the street the lots are numbered 8 through 14, respectively, commencing at the rear, the southernmost lot on the front adjoining the highway being designated Lot B. Subject area is shown on Dupree's map as the hereinbefore described extreme northern portion of the six acre plot, bounded on the south by Lots 7 and 8 and the cul de sac (upon which it encroaches slightly). It is conceded that almost all of Lot 8 and a portion *633 of the rear or eastern part of Lot 9 lay within the channel of Jones Creek as that facility existed prior to its relocation by defendant on the area in dispute herein.
The aforementioned Act of Sale with Mortgage from appellant to Westdale Woods, Inc., witnessed by McGill, contains the following provision:
"Simultaneously with the execution of these presents, vendor has delivered his bond signed by a surety company authorized to do business in the State of Louisiana in the principal sum of $17,632.00 to guarantee to purchaser and the City-Parish Government of East Baton Rouge, Louisiana the development of said subdivision with appropriate curbs, gutters, subsurface drainage, blacktop streets, with soil cement base and sidewalks to meet the requirements of the City Planning Commission and the Department of Public Works of the City Parish Government within ninety (90) working days from this date. Upon receipt of Project Engineer's certificate of completion, interest on the within described note shall commence."
At this juncture we conclude that, by virtue of the aforesaid Sale with Mortgage and attached map, appellant was in effect the subdivider of the six acre tract in question. As the owner of a previously unsubdivided tract of land, plaintiff undertook to sell certain portions thereof designated as numbered lots pursuant to a specified subdivision map. In this respect, it is worthy of note that in appellant's original petition it was averred plaintiff had subdivided the property according to plans approved by the Parish and claimed damages to the streets and drainage improvements plaintiff had constructed. However, when interrogatories were propounded to plaintiff touching upon these matters, appellant amended its petition by deleting therefrom reference to its having claimed to have subdivided the property. Appellant also abandoned its claim for damages to streets and drainage, and declined to answer the questions posed.
For the sake of clarity the hereinabove mentioned Act of Sale with Mortgage from appellant to Westdale Woods, Inc., will hereinafter be referred to as the "original subdivision sale" and the map attached thereto as the "original subdivision map," respectively.
We find no explanation in the record why Dupree's original subdivision map signed October 15, 1957, designates the relocation area as "unsubdivided" while his "Plan and Profile of Proposed Street Improvements in Madeline Place for Subdivisions, Inc." signed by him September 2, 1957, also appearing of record, designates the relocation area as "Jones Creek (Proposed Relocation)" followed by the ensuing notation: "Note: Canal R/W shown as per map by C.P.D.P.W. dated 5-16-57." It appears the map referred to in the cited notation is one originally prepared by Muse for defendant Parish. We can only speculate that at this time (October, 1957), the officers of plaintiff corporation still nurtured the hope that defendant would approve the proposed subdivision plan without requiring the developers to gratuitously provide the right of way required for the relocation of Jones Creek which was essential in order that Lots 8 and 9 be rendered usable and thus enable their sale as residential sites. In this regard we point out that Dupree's aforementioned "Plan and Profile * * *" contains the memorandum: "Note: Existing canal to be filled with excavated material from Jones Creek. Lots 8 & 9 are not to be considered buildable sites until such time as existing canal is filled."
The record conclusively establishes that after plaintiff's sale of the aforementioned 14 lots to Westdale Woods, Inc., said vendee and McGill proceeded as though they were owners and developers of the entire six acre tract. Mr. McGill, as developer, was paid for his services in installing streets and *634 utilities by the actual owners as hereinafter shown. On January 22, 1958, Robert E. McGill, as owner, entered into an agreement with defendant for the final approval of Lots 1 through 14, inclusive, of Madeline Courts Subdivision, (the name given the project), prior to actual completion of improvements, in consideration of McGill's promise to complete the undertaking in accordance with Mr. Dupree's plans within six months and McGill's furnishing satisfactory bond to insure such completion.
Thereafter on March 6, 1958, the final map of the subdivision was filed of record independently of any act of sale. Said final map contained the approval of the Director of the Department of Public Works granted February 5, 1958 and also the approbation of the Planning Commission given under date of March 6, 1958. This plat, (hereinafter referred to simply as the "dedication map"), shows the relocation area as a right-of-way for Jones Creek and contains an inscription signed by "Robert E. McGill, Owner" and "T. R. Walker, Pres., Westdale Woods, Inc., Owner", reading as follows:
"Know All Men By These Presents:
"That the undersigned owner has caused to be made this Plat of Madeline Court.
"The streets and rights-of-way shown on this Plat are hereby dedicated to the perpetual use of the Public for proper purposes, and further all areas shown as servitudes are granted to the Public for use of utilities, drainage, removal of septic affluent or sewage, or any other proper purpose for the general interest of the Public.
"No person shall provide or install a method of sewage treatment or disposal other than connection to a sanitary sewer system until the design for that method of treatment or disposal has been approved by the East Baton Rouge Parish Health Unit. Property shown is subject to restrictions as filed in Orig. ____ Bdl ____ in the office of Clerk and Recorder of East Baton Rouge Parish."
On March 6, 1958, McGill also executed and recorded an act establishing certain Commercial Restrictions in the subdivision in question. Subsequently, on March 17, 1958, Westdale Woods, Inc., represented by its President, Thomas R. Walker, executed and recorded a substantially similar instrument. Lastly, on March 28, 1958, Westdale Woods, Inc., recorded an act correcting certain restrictions relating to the subdivision.
The record discloses beyond question that McGill developed the subdivision with funds received at various times from the Presidents of plaintiff corporation and Westdale Woods, Inc. From appellant corporation McGill received the total of $9,400.00 in two payments, the last of which was in the sum of $3,000.00 paid on the occasion when Lot A was sold to a Mr. Alexander pursuant to a purchase agreement between McGill and said vendee. In this regard it will be recalled that McGill did not own either Lot A or B inasmuch as both had been retained by appellant. The sale referred to by McGill is a cash sale from plaintiff to Alexander dated April 13, 1961, which said transaction is hereinafter referred to as the "Alexander sale."
Construction on the Jones Creek relocation project commenced prior to the aforesaid Alexander sale, namely, in May, 1959, pursuant to a contract let by defendant Parish and was completed in October, 1960.
In the Alexander sale of April 13, 1961, plaintiff corporation conveyed property described as follows:
"A certain lot or parcel of ground, together with all of the buildings and improvements thereon, situated in that subdivision in the Parish of East Baton Rouge, Louisiana, known as MADELINE COURT, and designated on the official map of said subdivision made by Sam G. Dupree, C.E., dated October *635 28, 1957, filed for record as Original 38, Bundle 4122, in the office of the Clerk and Recorder of said parish, as LOT `A', said Madeline Court, said lot measuring one hundred six and 96/100 (106.96) feet front on Madeline Court, with a measurement around the curve connecting Madeline Court and the Baton Rouge-Hammond Highway of twenty-seven and 82/100 (27.82) feet, and having a depth on its southerly line and along the Baton Rouge-Hammond Highway of one hundred twenty-three and 78/100 (123.78) feet, and measuring one hundred forty-five (145) feet on its westerly line and along Tract B, as shown on said map, and measuring one hundred thirty-one and 72/100 (131.72) feet on its northerly line, subject to a servitude of 7.5 feet across its westerly line, as shown on said map; being a part of the same property acquired by present SELLER as per act of record in Book 1277, page 60, of the Conveyance Records of the Parish of East Baton Rouge, Louisiana." (Emphasis by the Court.)
Attached to the aforesaid sale is a resolution of authorization by the Board of Directors of plaintiff corporation containing inter alia, the following provision:
"BE IT RESOLVED that this corporation sell to R. B. Alexander that certain lot or parcel of ground designated as Lot A Madgeline (sic) Court on Map filed for record as Original 38, Bundle 4122, records of East Baton Rouge Parish, Louisiana, for the sum of $20,000.00 cash, and * * *."
Appellant maintains a dedication for public use can only be made by the owner of property and that an agency for such purpose cannot be shown by parol evidence. It is unnecessary to consider this contention in view of our finding that appellant has ratified the dedication contained in the hereinabove referred to dedicatory map.
Our law recognizes two methods of dedication of property to public use, namely: (1) statutory dedication pursuant to the provisions of LSA-R.S. 33:5051, and (2) implied dedication, a common law concept engrafted into Louisiana law by long standing jurisprudence.
Unquestionably the dedication map would constitute a dedication under the provisions of LSA-R.S. 33:5051 if signed by someone authorized to act on behalf of plaintiff corporation. A statutory dedication is complete and irrevocable even where there is no exercise or use of the dedicated property by the public. An informal or implied dedication, however, requires public use of the dedicated property with the assent of the owner, silent or otherwise.
It is well established jurisprudence that dedication to public use may be shown by any evidence which shows the intent of the owner to so devote his property. Sheen v. Stothart, 29 La.Ann. 630; Kohn v. Bellot, 169 La. 352, 125 So. 269; Wyatt v. Hagler, 238 La. 234, 114 So.2d 876; Batton v. Babb, La.App., 150 So. 417.
Apropos the rule presently under discussion, we approvingly cite the following language appearing in 11 McQuillin, Municipal Corporations, p. 630, § 33.02:
"* * * The offer or intention to dedicate need not be in writing. It may arise from oral declaration or be manifested by acts. Moreover, no particular acts or ceremonies are necessary to constitute a dedication, nor is any special or particular language required. * * *"
In Faunce v. New Orleans, La.App., 148 So. 57, it was held that the sale of lots in a subdivision pursuant to a sketch showing streets adjacent to the lots is an irrevocable dedication of the streets to the public. It is also established jurisprudence that a municipal corporation or other public entity need not be made a party to an act of dedication. Johnston v. City of New Orleans, 234 La. 697, 101 So.2d 206.
*636 Collins v. Zander, La.App., 61 So.2d 897, contains an excellent discussion of the law of dedication from which we quote the following as being peculiarly applicable to the case at bar:
"The general rule governing dedications which we find applicable to the instant case is stated in Dillon on Municipal Corporations, 5th Ed., vol. 111, Section 1079, as follows:
"`An intent on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. But the intention to which courts give heed is not an intention hidden in the mind of the land owner, but an intention manifested by his acts. It is the intention which finds expression in conduct and not that which is secreted in the heart of the owner, that the law regards. Dedications have been established in every conceivable way by which the intention of the party can be manifested.'"
As a general rule the intent to dedicate may be established in any conceivable manner in which the intention of the party can be shown, whether by acts or words. It is generally regarded that such intent may be shown from the acts or words of the owner and the attending circumstances, if the intent to dedicate is thereby unequivocally shown. In this regard we note the general rule stated in McQuillin on Municipal Corporations, 3rd Ed., Vol. 11, page 696ff., Sec. 33:30, thusly:
"§ 33:30. How intent shown.
"The intent to dedicate, or the absence of such intent, may be evidenced in a multitude of ways. Indeed, it should be said that a dedication may be made in every conceivable way by which the intention of the party whether by words or acts can be manifested. Consequently, the decisions uniformly hold that it may be shown from the declarations and acts of the owner, if unequivocal, and from all of the surrounding circumstances as well. In short, any act or declaration on the part of the owner showing a present, fixed, unequivocal purpose to dedicate may be sufficient to establish the intention of the owner."
* * * * * *
"Furthermore, where there is no writing, the dedication need not be evidenced by words but may result wholly from the actions and conduct of the owner of the land claimed to have been dedicated. In such case, the intention to dedicate may be implied from acts and conduct unequivocally and convincingly indicative of a dedication and upon which the public has a right to and does rely."
* * * * * *
"To elaborate and illustrate more fully, the intent may be shown in the following ways:"
* * * * * *
"Third, if the owner plats his property and then sells lots pursuant to the plat, he may be estopped to deny his intent to dedicate the public places indicated on the plat, at least as against purchasers, although on this point not all authorities are in accord. So where the proprietor of land sells and conveys lots in conformity and with reference to a city map, or a plat made by another, on which his land is laid off into lots with streets, etc., such sales are a recognition and adoption of the map or plat, and clearly demonstrate a dedicatory intention as to the public places indicated on such documents." (Emphasis added.) * * *"
Applying the foregoing principles to the case at bar we unhesitatingly conclude the instant record establishes appellant's unequivocal intent to dedicate the relocation area as a right of way for public drainage, namely, the re-situation of Jones Creek.
*637 Had appellant intended not to dedicate said relocation area to public use, when the sale of Lot A was made to Alexander, appellant could easily have confected said transaction by reference to its own original subdivision map attached to the sale of lots to Westdale Woods, Inc., which said map showed the relocation area as "unsubdivided." Reference to appellant's own original subdivision map would have described Lot A with precisely the same size, form and boundaries as did the dedication map attached to the sale to Alexander. Instead, appellant voluntarily chose to sell Lot A by reference to the dedication map which showed the relocation area as right-of-way for Jones Creek and which additionally contained a formally worded dedication of said relocation area to public use for drainage. By making this deliberate choice plaintiff recognized and adopted the aforesaid dedication map thereby clearly and unequivocally demonstrating an intent to dedicate to the public the property thereon shown to be allocated to public use. In his reasons for judgment, our learned brother below aptly remarked:
"* * * While the plaintiff did not sign the map which made the dedication contained thereon, the plaintiff adopted the map and approved it by a corporate resolution authorizing the sale to Alexander (WW-1) and the deed to Alexander describing the property by specific reference to that map. These two acts alone are sufficient to make the plaintiff a party to the map and the dedication as completely as if the plaintiff had signed the map as owner and amounted to full ratification of everything done by McGill in connection therewith."
In addition to the foregoing act of ratification the evidence overwhelmingly supports the clear inference that appellants duly constituted officers and representative (especially its President) were at all times fully aware of all activities conducted by McGill and Westdale Woods, Inc. in the physical development of the property into a residential subdivision. The testimony of Muse shows that during the development period he discussed with plaintiff's President all phases of defendant's requirements regarding the pending relocation of Jones Creek. His testimony further corroborates the notation on the relocation map to the effect that Lots 8 and 9 were to be filled with the dirt obtained by re-situating Jones Creek on the relocation area as shown on the map ultimately approved by defendant as hereinbefore shown. It also shows defendant would not give final approval to the subdivision map until the dedication was placed thereon. It likewise appears plaintiff benefited by the relocation because Lots 8 and 9 would not otherwise have been buildable and therefore were unsalable but for their being elevated by depositing thereon the dirt removed from the canal relocation. We believe the record also preponderates in favor of the conclusion that plaintiff's aforesaid President was fully aware of the commencement of work on the relocation project and stood idly by without protest. This conclusion must be reached in view of the circumstances shown, especially plaintiff's advancement of considerable sums to McGill for defraying development costs. Although such knowledge is denied by plaintiff's president, the facts and circumstances speak for themselves. It appears the construction required more than a year of work and the instant suit was not filed until more than a year after its completion. During this entire period of more than two years plaintiff, with full knowledge of the circumstances, stood idly by without protesting the alleged unauthorized invasion of its property but instead mutely accepted all benefits emanating therefrom. Plaintiff may not now belatedly complain. On the contrary, plaintiff is estopped by its silence from asserting any claim to compensation for the property in dispute herein.
It follows that the trial court correctly dismissed plaintiff's demand. It also follows that our esteemed colleague below *638 properly rejected defendant's third party demands.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.