271 So.2d 571 (1972)
CITY OF BATON ROUGE, PARISH OF EAST BATON ROUGE, Plaintiff-Appellee,
v.
STATE NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 9079.
Court of Appeal of Louisiana, First Circuit.
December 26, 1972.
Rehearing Denied January 31, 1973.
Writ Refused March 26, 1973.
*572 Robert L. Roland, Watson, Blanche, Wilson, Posner, Baton Rouge, for defendant-appellant.
Charles N. Malone and Joseph Keogh, City Parish Atty., Baton Rouge, for plaintiff-appellee.
Before LANDRY, TUCKER and PETERS, JJ.
PETERS, Judge ad hoc.
Defendant, State National Life Insurance Company, is the owner of the Reymond Building located on the southwest corner of Third and Florida Streets in the City of Baton Rouge. Attached to the north wall of the building is a canopy which projects over the sidewalk and whose northernmost edge extends several inches over Florida Street.
Plaintiff, City of Baton Rouge and Parish of East Baton Rouge, (City) filed a rule to show cause why defendant should not be compelled to remove that portion of the canopy which presently projects into the airspace over Florida Street. Answer was timely filed and the matter was subsequently converted into an ordinary proceeding. The matter was submitted by a written joint stipulation of facts, to which was attached eight exhibits. Judgment was rendered in favor of plaintiff enjoining defendant "from maintaining any portion of the canopy on the north side of the Reymond Building closer than 20 inches to a point in the airspace perpendicular from the face of the curb of the south side of Florida Street" and ordering the removal of the encroachments at defendant's expense. Defendant has appealed.
The canopy in question is approximately 9 feet 3 inches above the sidewalk and is approximately 10 feet by 9 inches wide and was constructed in 1916. Prior to the construction of the most recent improvements to Florida Street, the canopy extended to within approximately 8 inches of the airspace perpendicular to the back of the curb and within approximately 20 inches of the airspace perpendicular to the face of the curb. However, as a result of a Downtown Street Improvement Program by the City, the canopy now extends approximately 8 inches into the airspace perpendicular to the back of the curb and extends approximately 3 inches into the airspace perpendicular *573 to the face of the curb; i. e., prior to the construction, the canopy lacked several inches of extending into the airspace over the street and since the construction extends several inches into the airspace over the street.
The stipulated facts establish that the present physical dimensions of the street at all points pertinent to the litigation is 44 feet from back of curb to back of curb. In addition, there is a 10 foot wide concrete sidewalk on both the north and south sides of Florida Street at all pertinent points. Prior to the construction of the improvements, the physical dimensions of the street at all points pertinent to the litigation were: 41.3 feet from back of curb to back of curb; an 11 foot sidewalk on the North side of Florida Street and an 11 foot 5 inch sidewalk on the South side of the street.
In ruling in favor of the City, the trial court was of the opinion the City had authority to demand removal of the canopy by virtue of the provisions of Baton Rouge City Code, Title 2, Sec. 650, which reads in part: "No temporary or permanent structure or building or part thereof, or wall, fence, steps, posts, or other obstruction shall be erected or permitted to remain after being erected, on any street, alley, sidewalk, or other public place, except by permission of the City Council and except as is provided in Sec. 2:154. . ."
However, the court felt that only that portion of the canopy that encroaches over the travelled portion of Florida Street should be removed. It reasoned that since this canopy had protected patrons of the Reymond Building and other pedestrians of the City from the elements since 1916, it could continue to do so as long as its width is reduced to such an extent that it no longer extended over the travelled portion of the street. To accomplish this result, the court determined its width should be reduced so the northern edge of the canopy extends no closer than 20 inches to a point in the airspace perpendicular to the face or street side of the curb. This is approximately the same relative position the canopy occupied with respect to the old curb prior to the widening of Florida Street.
The trial court was further of the opinion the cost of removal should be borne by the defendant, based primarily upon the provisions of Art. 861 of the Louisiana Civil Code, which states, in essence, that those works built on public places may be removed at the expense of those who claim them, at the insistance of the municipality.
We agree with the ultimate decision reached by the trial court. However, we feel that a more protracted discussion of the legal basis upon which the City can demand removal of the canopy is necessary.
Germane to a decision in this case is the determination as to whether there has been a statutory, or at least an implied or common law, dedication of Florida Street to the City and, if so, whether such dedication grants to the City ownership of the 64 foot strip or merely a servitude.
Louisiana recognizes two types of dedication, statutory and implied or common law. The chief differences in result between the two types of dedication are that a statutory dedication operates by way of a grant and vests title in the public while a common law dedication operates by way of an estoppel in pais and confers to the public only a servitude. A statutory dedication is complete and irrevocable even where there is no exercise of the use of the dedicated property by the public. Effect of a statutory dedication is generally indicated by the statute itself. The Louisiana Statute governing statutory dedication is found in R.S. 33:5051. That statute, which dates back to 1896, requires among other things, the filing of a map and a formal dedication to the public use made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plots shown on the map.
*574 In a common law dedication, there must be shown a definite intent to dedicate on the part of the land owner and an acceptance by the public. Neither element must be formally expressed but both must be sufficiently clear so as to exclude every other reasonable hypothesis except that of dedication. See Parish of Jefferson v. Doody, 167 So.2d 489 (La.App. 4th Cir. 1964) and cases cited therein. Our courts have held that dedication to the public may be shown by any evidence which shows intent of the owner to so devote his property. Mere use by the public for the purpose intended by the dedicator can constitute a sufficient acceptance. Arkansas-Louisiana Gas Company v. Parker Oil Company, 190 La. 957, 183 So. 229; Best Oil Company v. Parish Council of East Baton Rouge, 176 So.2d 630 (La.App. 1st Cir. 1965).
Several maps were attached to the stipulation of evidence. These maps show that defendant's property is located in the old Hickey, Duncan and Mather Town subdivision to Baton Rouge. The original map or plan of the subdivision could not be located. The earliest map showing this subdivision and Florida Street was dated 1837. This map shows Florida Street to be 60 French feet wide which translates into 64 U.S. feet. A map dated 1855 and the official map of Baton Rouge dated 1885 both show Florida Street to be 64 feet wide. The property of defendant is located just south of and contiguous to Florida Street.
None of these maps indicates a formal dedication by any land owner to the City of the 64 foot strip comprising Florida Street nor is there anything else in the record to show a formal dedication of the land by the owner. The failure to establish proof of a formal dedication by the land owner and the filing of the plat thereof, one of the necessary requirements of R.S. 33:5051, is alone sufficient for us to rule that the City has failed to show that there has been a statutory dedication of the property.
However, these maps do show that since the year 1837 a 64 foot strip on Florida Street at the point in discussion has been considered as a main thoroughfare by the City and has been used and maintained by the City for that purpose even to the present date. In our opinion this is sufficient evidence to establish an implied or common law dedication of the property for the intended use as a street and the acceptance of the dedication and the use thereof by the City for this intended purpose.
Defendant contends, alternatively, that even if it were held that the canopy encroached upon a servitude belonging to the City, under the provisions of LSA-C.C. Art. 505, the City is not granted unlimited airspace above said servitude. LSA-C.C. Art. 505 states, in part:
"The ownership of the soil carries with it the ownership of all that is directly above and under it."
Defendant argues this means the owner of the fee title owns the airspace above the servitude and that the servitude for street purposes carries with it only that use of the airspace which he could reasonably anticipate would be required for the effective use of the servitude granted, and airspace not so required for such effective use would remain with the land owner. Defendant contends that since automobiles and trucks were not in commercial use in 1837, it was beyond comprehension at that time that a street would be used for other than pedestrian or animal-drawn vehicular traffic, which would not have required dedication of the airspace presently occupied by defendant's canopy. Defendant thus concludes the airspace which plaintiff would be entitled to use would be only that granted to the City at the time of the dedication.
In the early case of New Orleans v. Kaufman, 138 La. 897, 70 So. 874 (1916), *575 the Supreme Court stated the rule as to what is dedicated to the public:
"The public right to use of streets goes to the full width of the street and extends indefinitely upward and downward."
McQuillian's Municipal Corporation 3rd Edition, Sec. 30.83 declares the rule thusly:
"The general observation that `the public right to use the streets goes to the full width of the street and extends indefinitely upward and downward,' has in substance been affirmed in many decisions. As the control of the municipality extends above the surface of the street as well as to the surface, it may regulate overhead projections and even prohibit them where they encroach on the street or sidewalks."
In Sticker v. Southern Bell Telephone & Telegraph, La.App., 101 So.2d 476, we stated:
"Article 771 of the LSA-Civil Code provides that `When a servitude is established, everything which is necessary to use such servitude is supposed to be granted at the same time with the servitude.' Article 772 provides that `He to whom a servitude is due, has a right to make all the works necessary to use and preserve the same.' Thus, it is clear that where a servitude has been acquired, all the rights necessary to preserve or use this servitude pass with it."
Applying these rules herein, it is apparent that defendant's argument is without merit and the City has the authority to regulate all the airspace above the street pursuant to the power granted to it as holder of the servitude.
Finally, defendant contends that even if there is found to be an encroachment of the servitude belonging to the City, the encroachment is a matter of inches into the street and thus this encroachment falls within the exceptions provided by Art. 862 of the Louisiana Civil Code. That article reads as follows:
"If the works, formally constructed on the public soil, consist of houses or other buildings, which can not be destroyed, without signal damage to the owner of them, and if these houses or other buildings merely encroach upon the public way, without preventing its use, they shall be permitted to remain, but the owner shall be bound, when he rebuilds them, to relinquish that part of the soil or of the public way, upon which they formerly stood."
Civil Code Art. 862 contemplates that removal of works constructed on the public soil will not be required only if their encroachment upon the public way does not prevent its use. Such is not the case here principally because of the decision by the governing authority of the City and the Parish that the encroachment of the canopy does prevent the use by the public of the airspace on this busy, main thoroughfare of the City. Additionally, the damages caused the owner by the removal of the canopy off the public way could not in our opinion constitute "signal" damages.
In view of the above conclusions, the cost of removal shall be borne by defendant pursuant to the provisions of LSA-C. C. Art. 861.
Accordingly, for the foregoing reasons, the judgment rendered by the trial court is affirmed, at appellant's cost.
Affirmed.