453 So.2d 572 (1984)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Catherine D. RICHARDSON.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Landry W. RICHARDSON.
Nos. 83-CA-0506, 83-CA-0507.
Court of Appeal of Louisiana, First Circuit.
May 15, 1984.
*573 Richard N. Burtt, Asst. Gen. Counsel, Baton Rouge, for plaintiff-appellant, State of La., Dept. of Transp. and Development.
J. Arthur Smith, III, Baton Rouge, for defendants-appellees, Catherine D. Richardson and Landry W. Richardson.
Before LOTTINGER, EDWARDS and WATKINS, JJ.
EDWARDS, Judge.
Under Louisiana's "quick taking" statutes, LSA-R.S. 48:441 et seq., the Department of Transportation and Development (DOTD) filed two expropriation suits, later consolidated for trial, against Catherine D. and Landry W. Richardson to acquire certain highway frontage property necessary for widening Louisiana Highway 67, also known as Plank Road, to a four-lane highway in and around Clinton, Louisiana.
In the first suit (No. A-15,710), filed on April 1, 1980, the DOTD expropriated one parcel of land, parcel No. 5-7, consisting of 131 square feet, in full ownership, reserving in the landowners all rights to any minerals, and another parcel, No. 5-3-C-2-R-2, consisting of 871 square feet, as a temporary construction servitude, and deposited into the court registry $235.00 as compensation for the land taken. In the second suit (No. A-17,422), filed on June 30, 1981, the DOTD took in full ownership, *574 minus the minerals, parcel No. 5-7-E-1, consisting of 1,307 square feet and deposited $690.00 in the court registry.
On January 11, 1981, the landowners filed an answer challenging the value of the land taken and seeking $12,281.00 in compensation and severance damages plus attorney and expert witness fees and costs. On April 1, 1982, they filed an amended answer and reconventional demand alleging that the DOTD had begun construction and had in fact taken on December 1, 1981, an additional 932 square feet of their land, designated at trial as parcel "X", for which it owed them additional compensation under LSA-R.S. 19:14.
The trial court rendered judgment in favor of the landowners and awarded them $2,571.05 for the four parcels of land5-7, $129.69; 5-3-C-2-R-2, $103.47; 5-7-E-1, $1,359.28; and parcel "X", $978.60$5,923.24 in severance damages for the remainder of the property, and $2,500.00 in attorney fees.[1]
The DOTD appeals, assigning four errors to the judgment. The first three assignments of error involve the same issues as those at trialthe extent of the taking, the value of the land taken, and the amount of severance damages. The fourth assignment of error relates to the $2,500.00 attorney fee.

THE EXTENT OF THE TAKING
The only issue to be resolved here is whether the State owes any compensation for parcel "X".
At trial, the DOTD argued chiefly that parcel "X" falls within an existing 40-foot right-of-way servitude which the State had acquired by virtue of a right-of-way deed executed by the landowners' ancestor in title in 1931 and filed in the conveyance records of East Feliciana Parish in 1932. Rejecting this argument, the trial court reasoned that because the 1931 document relied on by the State was not in authentic form, it was an invalid donation, absolutely null, and could not operate to pass title to the State.
On appeal, the DOTD's principal argument is that the 1931 right-of-way deed, though invalid as a donation of immovable property, nonetheless serves as a valid implied dedication of the 40-foot servitude which the State accepted in 1931. Because we find merit to this argument, we find it unnecessary to discuss the DOTD's other arguments in connection with this issue.[2]
Since 1938 and the landmark case of Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229 (1938), Louisiana has consistently recognized two types of dedications, statutory and implied or common law.
A statutory dedication is perfected by substantially complying with the requirements of LSA-R.S. 33:5051, which requires among other things the filing of a map and a formal dedication to public use by the owner of the property. See City of Baton Rouge v. State National Life Ins. Co., 271 So.2d 571 (La.App. 1st Cir.1972). However, failure to file the required map or to include the dedicatory language in the plat will not invalidate the dedication, provided the statute is otherwise substantially complied with. See Garrett v. Pioneer Production Corporation, 390 So.2d 851 (La. 1980).
In a common law dedication, on the otherhand,
there must be shown a definite intent to dedicate on the part of the landowner and an acceptance by the public. Neither element must be formally expressed but both must be sufficiently clear so as to exclude every other reasonable hypothesis *575 except that of dedication. Our courts have held that dedication to the public may be shown by any evidence which shows intent of the owner to so devote his property. Mere use by the public for the purpose intended by the dedicator can constitute a sufficient acceptance. (emphasis added) (citations omitted).
City of Baton Rouge, 271 So.2d at 576.
Joyce v. Brothers Realty Company, 127 So.2d 756, 759-60 (La.App. 3rd Cir.1961), best summarizes the "fundamental principles" of dedication, applicable to the present controversy:
We are in agreement with the fundamental principles of dedications that the most definite form of dedication is by a deed setting forth the exact purposes for which the land is conveyed, and a record thereof, together with a plat of the property. The deed may be made to a designated grantee and convey in trust for the public [either full title or a servitude], or may be for a designated purpose, without any grantee. It is also true that no particular form of deed, or deed at all, is necessary for the dedication of land to the public; it suffices that the owner permits the land to be used by the public with the intention of making the dedication. Dedications to public use, and servitudes in favor of the public, are not governed by the strict rules which apply to private property; the visible signs of dedication and open use of the property by the public supply the place of both title and registry. There is no sacramental form to be followed in dedicating property to public use in order that the dedication be effective. Furthermore, it is not necessary that title be in the public, nor is it necessary that the word "dedicate" be used as it is not decisive of the character of the conveyance of the property .... (emphasis added) (citations omitted).
According to the principles established in City of Baton Rouge and Joyce, the 1931 document relied on by the State is clear and express evidence of a definite intent to dedicate a right-of-way servitude in favor of the State.
On March 6, 1931, Rufus McKnight, the landowners' ancestor in title, signed a document entitled "Right of Way Deed," by which he intended to "dedicate, transfer, assign, set over and deliver unto the State of Louisiana," a right-of-way servitude over a portion of his property forty feet from the centerline of the old Clinton-Baton Rouge State Highway, now known as Louisiana Highway 67. This deed further stipulated that "It is expressly understood and agreed that this dedication and transfer of the above-described right-of-way is made for and shall be used solely for the construction and maintenance of the said Clinton-Baton Rouge State Highway (Route No. 36), the exact location thereof to be hereafter determined by the State Highway Engineer, and for no other purpose." The document was signed in the presence of two witnesses and later filed in the conveyance records of East Feliciana Parish on August 8, 1932.
Though lacking authentic form, the document still serves as an express intention to dedicate a servitude to public use. It was made to a designated grantee, for a designated purpose, and though unnecessary, contains express dedicatory language. It was moreover witnessed and recorded, placing all third parties on notice that the property was partially burdened with a servitude.
All that remains then is to find sufficient evidence manifesting a public acceptance of the designated servitude.
From the evidence adduced at trial, the right-of-way was acquired by the State in connection with a 1931 project to resurface the old Clinton-Baton Rouge State Highway, or Plank Road. A.M. McConnell, the landowners' expert civil engineer and surveyor, testified that prior to the 1931 resurfacing project, the width of the Plank Road right-of-way was 36 feet, or 18 feet from the centerline, as established by an old survey map made in 1838. There is, however, nothing in the record to indicate the actual width of the roadway prior to 1931.
*576 According to Ray Ortego, land surveyor for the DOTD, after the acquisition of the 40-foot servitude and the completion of the resurfacing project, the actual width of the new roadway, including the road pavement, the shoulder and the drainage ditch, extended at least 24 feet from the old centerline, or six feet beyond the prior right-of-way established by the 1838 map.[3] Thus, the State actually used at least six feet of the 40-foot right-of-way dedicated to the public for highway purposes.
After completion of the project, the Highway Department also prepared and filed in its Baton Rouge office, a set of "as built" plans. These "as built" plans not only show the actual width of the road that was resurfaced in 1931 but also indicate the 40-foot servitude which the State had acquired over Rufus McKnight's property.
We note in addition that because the 1931 deed was filed in the public records in 1932, the present landowners had constructive knowledge of the dedication when they acquired the property in 1947, whether they understood the document to be a dedication or not. Incidentally, a survey made in 1975 in connection with a boundary agreement between the Richardsons and an adjacent landowner specifically includes the contested 40-foot servitude and proves that the landowners had actual notice of the dedication as well.
Although acceptance of the dedication by the public can be established by mere use, it is not exclusively established by use. In this case, the 6-foot partial use of the servitude in 1931 and the reference to the servitude in the "as built" plans, prepared after completion of the project, plus the filing of the right-of-way deed in the public records in 1932 together constitute sufficient evidence of public acceptance of the servitude to perfect the dedication.
We reject appellees' argument that even if the 1931 document effected a valid dedication, the dedication was limited to the use necessary for completion of the 1931 resurfacing project only. Dedications to public use are not governed by the same rules regulating conditional donations and are irrevocable absent a specific reservation of the right of reversion. See Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961). The phrase "for no other purpose," found in the last paragraph of the deed, clearly refers to the designated purpose for which the property was dedicated, namely a highway purpose, and did not limit the use of the property to the particular resurfacing project in 1931.
Accordingly, since parcel "X" falls entirely within the 40-foot servitude to which the State already has title, the DOTD does not owe any compensation for its use.

THE VALUE OF THE LAND TAKEN
All appraisers testified, and the trial court agreed, that the highest and best use of the property was commercial and based their estimates of the value of the land on comparable sales of property in the surrounding area. The DOTD's two appraisers together estimated the value of the land to be between $19,000.00 and $23,000.00 per acre. The landowners' appraiser, Kermit Wayne Williams, estimated the value of the three parcels taken by suit to be roughly between $53,500.00 and $58,000.00 per acre. They all agreed that the value of the property at the time of the taking should be based on an annual upward adjustment of 12%.
In evaluating this conflicting testimony, the trial judge noted in his reasons for judgment,
The comparables relied on by either side to establish the value of the subject property are to some extent flawed. The *577 Department relied on comparables which were relatively close in time to the dates of the taking but were remote in distance and on the fringe of the growth being experienced in the area. The landowners relied on comparables which were extremely close in physical proximity but rather remote in time. The court feels that the comparables utilized by the landowners with an upward adjustment for time yields the most accurate value of the land. However, the court is not convinced that the 12% per year growth rate used by the defendants' expert is accurate and feels that a 6% per year upward adjustment in value is the maximum warranted.
While we may have decided this issue differently had we tried the case, we cannot say that the trial court's acceptance of the landowners' appraisals is clearly wrong.
The landowners, however, in their answer to the DOTD's appeal, contend that the trial court's upward adjustment of 6% rather than 12% is erroneous. We agree. Nothing in the record supports a lower upward adjustment than the 12% agreed on by all the appraisers. A trial court may not substitute its opinion for that of an expert's when his testimony is based on correct facts and good reasoning. See State, Department of Transportation and Development v. Tynes, 433 So.2d 809, 817 (La.App. 1st Cir.1983).
We accordingly amend the judgment to allow a 12% upward adjustment in the value of the property to the time of the taking.

SEVERANCE DAMAGES
The front of the landowners' property slopes down to Plank Road in a short but fairly steep dirt embankment. Prior to the taking, there were two points of access through this embankment, a driveway on the south end of the property and a set of concrete steps situated roughly in the middle.
After the taking, the DOTD retained the location of the driveway and steps but constructed along the front of the property an 8-inch barrier curb and a 4-foot high brick wall.
The DOTD's appraisers testified that because the points of access before and after the taking remained the same, the remaining property suffered no severance damage.
Mr. Williams testified that the construction of the barrier wall and curb diminished the commercial value of the property by a factor of 10%.
Accepting Mr. Williams' estimate of severance damages, the trial judge reasoned,
If the property were developed commercially, access along its entire front would be extremely desirable. Gaining that type of access has been turned from an easy simple task to an extremely difficult, if not impossible task as a result of the taking. The estimate established by the landowners' expert of 10% of the value of the remaining property appears reasonable and is accepted by the court.
Severance damage is any depreciation in market value of the remainder of a landowner's property caused by the taking. Such damages are recoverable and are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Department of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975). However, there is no fixed or artificial formula by which such damages must be proved. In fact, the informed and reasoned opinion of an expert, corroborated by the facts in the record, may be sufficient proof of the severance damage loss, especially where it is accepted by the trier of fact. State, through Department of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir.1979).
We find no manifest error in the trial court's factual finding as to severance *578 damages nor in his evaluation of Mr. Williams' testimony.
The award, however, is based upon a calculation which included the value of the property actually taken with an upward adjustment of only 6% and the amount of compensation awarded for parcel "X". Deleting the amount of compensation awarded for parcel "X", and adjusting the growth rate to 12%, the total amount of severance damages is increased from $5,923.24 to $7,433.61.[4]

ATTORNEY FEES
The landowners' claim for compensation for parcel "X" was based on the general expropriation provisions contained in Title 19. LSA-R.S. 19:8 provides for an award of "reasonable attorney fees" for Title 19 proceedings. Since we have determined that the DOTD does not owe compensation for parcel "X", the landowners' claim for attorney fees is limited to 25% of the amount of the excess award as provided in LSA-R.S. 48:453(E). The excess award is calculated by subtracting the amount of the initial deposits ($925.00) from the amount of the final award ($10,186.52), which now equals $9,261.52. The attorney fees are therefore reduced to $2,315.38.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to reduce the compensation for the amount of land taken from $2,571.05 to $2,002.91, to increase the severance damages from $5,923.24 to $7,433.61, and to reduce the attorney fees from $2,500.00 to $2,315.38. In all other respects, the judgment is affirmed. All costs are to be divided equally between the parties.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The total award of $9,244.29 included certain other specified amounts, which are not contested on appeal, and was subject to a credit of $925.00, the amount previously deposited in the court's registry.
[2] The DOTD argues that the State has acquired the right-of-way in a couple of other ways, either through application of the St. Julien doctrine and LSA-R.S. 19:14 or through several suggested periods of prescription. Pretermitting discussion of these contentions, we simply note that neither of them are persuasive.
[3] Act 630 of 1976, effective October 1, 1976, extends the area acquired as public roads by declaration or by informal dedication to a point one and one-half feet beyond the outside slope of the roadside ditch. Mr. Ortego included this extension in his calculation of the width of Plank Road, making a total of 25.5 feet from the centerline. We decline to apply that statute retroactively in this case and therefore have subtracted that extension from Mr. Ortego's calculations. See State, Dept. of Highways v. Traina, 347 So.2d 55, 57 (La.App. 2d Cir.1977).
[4] The total amount of severance damages equals 10% of the difference between the total value of the property before the taking, estimated by Mr. Williams to be $77,089.00, and the value of the property actually taken, which with an upward adjustment of 12%, minus the amount owed for parcel "X", now equals $2,752.91. This results in a figure of $7,433.61.