510 So.2d 51 (1987)
Kathy BROOKS, as Tutrix of Dina Renee Alfano,
v.
ST. TAMMANY PARISH SCHOOL BOARD, et al.
No. CA 86 0911.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Writ Denied October 16, 1987.
Margaret Kern, Clint Pierson, Jr., Covington, for plaintiff-appellee.
William Mysing, Jr., Covington, for David Lasley, defendant-appellee.
Roy Burns, Jr., Covington, for third party defendant-appellee.
Fred Campbell, Sidney Hardy, New Orleans, for St. Tammany Parish School Bd.defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit for damages in tort by the mother of a special education student, individually, *52 and on behalf of her child, against a parish school board which alleges the child was injured on a junior high school's premises by two other students because of the negligence of the school board. The school board answered and subsequently filed a third party demand against the fathers of the two students whose activity caused the special education student to be injured. The two fathers were sued, individually, and in their capacities as the administrators of the estates of their minor children. The plaintiff then amended her petition to add the two fathers as parties defendant. The trial court found the school board at fault because an unreasonable risk of harm was created when it allowed a mentally retarded student, with poor balance, to travel alone near the concession stand line where horseplay among nonretarded students was common. The trial court found the horseplay of the two nonretarded students caused the special education student to fall and injure herself, but he exonerated their fathers of liability based on the "third party fault" of the school board. The plaintiff was awarded $60,000 for general damages and $7,283.99 for special damages. The school board took a suspensive appeal from the plaintiff's judgment against it and a devolutive appeal from the judgment which dismissed its third party demand.

FACTS
In the fall of 1983, Dina Renee Alfano, the fourteen year old minor daughter of Kathy Brooks, was enrolled in the special education program at the William Pitcher Junior High School in Covington, St. Tammany Parish, Louisiana. On February 14, 1984, at approximately 1:00 p.m., Dina had finished eating her lunch, left the lunchroom and was passing by the concession stand located on the playground of the school. Two nonretarded students at the school, Joshua D. Lasley (the 13 year old child of David Lasley) and Stefanie L. Jones (the 13 year old child of James Jones) became engaged in horseplay in the concession stand waiting line. After about ten seconds of horseplay, Dina was bumped, fell down and was injured.
Dina was taken to the St. Tammany Parish Hospital emergency room where her injury was diagnosed as a fractured left hip. The break was surgically repaired by Dr. Luis Matta on February 15, 1984. A nail plate was installed to stabilize the fracture. After discharge from the hospital, Dina was confined to her bed for approximately one month, followed by another month of ambulating with the aid of a walker. She returned to school in November of 1984. In August of 1985, Matta surgically removed the nails from Dina's hip. Dr. Matta assigned a twenty-five percent permanent disability to Dina's left leg.

ADMISSIBILITY OF EVIDENCE OF REMEDIAL ACTS

(Assignment of Error Number 2)
The St. Tammany Parish School Board (School Board) contends the trial court committed error by admitting into evidence testimony about increased personal supervision of Dina when she returned to school after the accident. Specifically, evidence was admitted to show Dina was no longer allowed to go into the school yard, and Dina was no longer permitted to be on school grounds without an aide being present.
It is well settled that evidence of remedial measures taken subsequent to an accident, for the purpose of preventing a similar recurrence, is not admissible to show negligence or show an admission of fault. Mobley v. General Motors Corporation, 482 So.2d 1056 (La.App. 3rd Cir.1986), writ denied, 486 So.2d 735 (La.1986); Holmes v. State, Department of Highways, 466 So.2d 811 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 31 (La.1985); Esta v. Dover Corporation, 385 So.2d 439 (La. App. 1st Cir.1980), writ denied, 392 So.2d 690 (La.1980). The trial court committed error by doing so in the instant case.
This assignment of error has merit.

APPLICABLE STANDARD FOR APPELLATE REVIEW OF FACTS
Ordinarily, the trial court's findings of fact are reviewed under the manifest *53 error (clearly wrong) standard. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). However, where some legal error, such as improper admission of evidence, interdicts the trial court's fact-finding process, the manifest error (clearly wrong) standard is no longer applicable, and the appellate court must make its own independent review of the record and determine a preponderance of the evidence. McLean v. Hunter, 495 So.2d 1298 (La.1986) and the cases cited therein. The improper admission of evidence of remedial acts by the trial court has interdicted its factual findings herein. Accordingly, we have made our own independent review of the record to determine a preponderance of the evidence.

LIABILITY OF THE SCHOOL BOARD

(Assignments of Error Numbers 1 and 4)
The School Board contends the trial court committed error by failing to accept the uncontradicted expert testimony of Carol Smith and by finding it was negligent when it allowed Dina to travel alone near the school concession stand.
The record reveals the following facts. Dina R. Alfano first enrolled as a student in the special education program at William Pitcher Junior High School in the fall of 1983. Dina was placed in a class of mildly and moderately retarded children. With an IQ level of 56, Dina is classified as moderately mentally retarded. Her mental age assignment, at the time of the accident, was six years. Her motor skills development was categorized as four years and two months. Ms. Gloria Stalling, Dina's special education teacher at William Pitcher Junior High, testified that the special education children were allowed to go to assemblies and participate in other school programs with the general student population.
On February 14, 1984, Dina had been escorted to the lunchroom, along with the other special education students, by a teacher's aide. Once in the lunchroom, the aide left and the duty teacher in the lunchroom supervised the special education students. When the students were finished eating their lunch, they were free to go on to the schoolgrounds. Dina left the lunchroom and was standing in the breezeway with several other nonretarded students. All these students were waiting for the concession stand to open. While waiting, two nonretarded eighth grade students, Joshua David Lasley and Stefanie Jones, engaged in some horseplay which resulted in Dina being bumped.
The principal of the school, Donald Morin, testified that there were approximately six hundred students in the student body in 1984. About ninety-five of these students were considered special students due to some type of mental or physical problem. The educational program for each special student at the school is formulated in a conference in the student's Individualized Education Program (IEP). The IEP is developed by a committee which includes a school administrator, the child's parent, and a member of the student's evaluation team. The IEP is designed to help the student increase his skills to the maximum level. Mr. Morin further testified that the teachers who are on duty are aware of the special education students and would exercise closer supervision toward them. On the date of the accident, four teachers were on duty near the breezeway where Dina was injured. The ratio of teachers on duty to students on the grounds during the lunch period would range from five teachers to one hundred twenty students to ten teachers to six hundred students.
Ms. Gwynneth Crosby, who was on duty near the breezeway where the accident occurred, testified that she could not recall the date of the accident. However, she had been a teacher for six years and never recalled having any trouble with supervision of the breezeway. She testified that she was unaware of any other injury ever taking place at the breezeway.
Gloria Stalling, Dina's teacher, was questioned about her opinion of Dina's need for individual supervision. Ms. Stalling testified that she did not feel that Dina needed individual supervision. Her opinion was concurred in by the other members of the *54 IEP committee. The following testimony demonstrates that Ms. Stalling felt that the decision not to have Dina individually supervised was a correct one:
Q Did you make a conscious decision that her having a four year two month old motor skill development, even though she was fourteen years old, and having the mental development of a six year old, even though she was fourteen years old, that that was okay, that she could handle herself in the environment of horseplay on the school ground?
A Well, she really showed improvement over what the records said. She had no trouble in the classroom, even on the playground, other than whatafter what happened to her.
Ms. Stalling also testified that she was told by Kathy Brooks, Dina's mother, that Dina had a key to the house and was allowed to go home unsupervised after school for a period of twenty to thirty minutes.
Ms. Carol Smith, whom the court recognized as an expert in the field of special education, testified about the primary goal of education of handicapped children as follows:
The primary goal of education in dealing with handicapped students is that the child will be placed and function in a situation as close to regular education as is possible for that particular child. It's a decision that is made for each child based on the levels of performance and the needs of that particular child.
Ms. Smith further testified that federal legislation and state legislation mandate that handicapped children must be "mainstreamed" or placed in a situation as close to the regular education program as possible. She stated the rationale for these laws as follows:
[T]he rationale is that the more contact a child has with non-handicapped, normal, regular peers the more like those peers they will be able to be and to function.
Smith and her staff visit school classes to ensure compliance with laws in regard to mainstreaming, and the State Department of Education also monitors the programs to make sure the children are being appropriately placed. Smith reviewed Dina's evaluations, her IEPs, and her placement documents. She was aware that Dina was classified as moderately retarded and that her mental age was six years and that she had diminished motor skills. Smith specifically testified that Dina's program at the school was appropriate. The only types of students which should be totally segregated are those which are very severely impaired and who have limited or no motor skills and no language ability. The only other children that should be segregated are those who would endanger themselves or others. Dina did not fit into any of these categories. Smith said that allowing Dina to be with the regular students at the breezeway without one-on-one supervision was appropriate.
The record is clear and undisputed that the School Board had formulated a program of education for Dina which was designed to enable her to increase her skills to the maximum level. La.R.S. 17:1941 provides as follows:
It is and shall be the duty of state, city and parish public school systems of the state of Louisiana to provide an appropriate, free, publicly supported education to every exceptional child who is a resident therein. Out of recognition that included within any population one will find some children who require special education and related services, it is the purpose of this Chapter to provide for a flexible and uniform system of special education for all children requiring such programs and related services; to provide a flexible and nondiscriminatory system for identifying and evaluating the individual needs of the child; to determine the appropriateness of the special education program; to conduct a periodic evaluation of the program and its benefit to the child; to prevent denials of equal educational opportunities on the basis of national origin, sex, economic status, race, religion, and physical or mental handicap or other exceptionalities in the provision of appropriate, free publicly supported education; and to provide such special education *55 programs herein described and related services in the least restrictive alternative education settings. [Emphasis added.]
The School Board was required by law to allow Dina to be placed in the "least restrictive" program.
Additionally, the input of the parent(s) seems to be tantamount to the success of the IEP program. Conferences are held every year to discuss the needs of each child. Kathy Brooks admitted that she never requested that Dina have individual supervision.
Although Dina was moderately retarded, there is no evidence in the record to indicate that she was somehow predisposed to injury. Kathy Brooks testified about her daughter's physical health as follows: "Physically I have been told that she's just as healthy as an apple. She's real strong."
The trial judge found as a fact that the area where the accident occurred was generally well supervised and that the accident happened so quickly that one-on-one supervision would not have prevented the accident. The essence of the trial court holding of liability is that Dina should have been segregated from other students because of her disabilities. The expert testimony does not support this conclusion. The trial judge disregarded the unrebutted expert testimony of Carol Smith and Gloria Stalling as to the appropriateness of Dina's program. A trial court may not substitute its opinion for that of an expert when his testimony is based on correct facts and good reasoning. State, Department of Transportation and Development v. Richardson, 453 So.2d 572 (La.App. 1st Cir. 1984); State, Department of Transportation & Development v. Tynes, 433 So.2d 809 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1153 (La.1983). The preponderance of the evidence shows the School Board was not negligent. The trial court's ruling to the contrary is wrong.
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and the plaintiff's petition is dismissed with prejudice. The plaintiff is cast for all costs of these proceedings.[1]
REVERSED AND RENDERED.
NOTES
[1] The third party demand against the fathers of Joshua David Lasley and Stefanie Jones is no longer at issue because of the dismissal of the School Board. Therefore, assignment of error number 3 need not be addressed by this court.