STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 0768

STATE OF LOUISIANA IN THE INTEREST OF
SONJA CASTON

Judgment Rendered: **FEB 1 9 2021**

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Numbers 687607

Honorable Timothy E. Kelley, Judge Presiding

\* \* \* \* \* \*

Todd A. Hebert
New Orleans, Louisiana

Counsel for Defendant/Appellant
Sonja Caston

James Hoffman
Baton Rouge, Louisiana

Counsel for Appellee
State of Louisiana Department
Of Children and Family Services

\* \* \* \* \* \*

BEFORE: GUIDRY, McCLENDON AND LANIER, JJ.

**McCLENDON, J.**

In this appeal, Sonja Caston challenges the judgment of the district court that reversed the decision of the Division of Administrative Law (DAL). The DAL decision overturned the valid finding of death by neglect against Ms. Caston by the Department of Children and Family Services (DCFS). For the following reasons, we affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

On March 29, 1992, DCFS received a report of abuse and/or neglect identifying Ms. Caston as the alleged perpetrator of abuse and/or neglect against her seven-year old child, C.C. C.C. died on April 1, 1992. After an investigation, DCFS validated the allegation of death resulting from abuse and/or neglect against Ms. Caston. On April 8, 2019, DCFS sent to Ms. Caston notice of the valid finding along with notice of her appeal rights through the DAL. Ms. Caston requested an administrative hearing before the DAL to challenge the validity determination, which hearing was held on June 19, 2019. The DAL issued its decision on July 17, 2019, overturning the DCFS's valid finding of death by neglect against Ms. Caston. The DAL determined that a preponderance of the evidence did not support the conclusion that Ms. Caston's conduct justified the valid finding of death by neglect against her. After its motion for reconsideration was denied, DCFS filed a petition for judicial review of the DAL decision. On November 15, 2019, finding the decision of the DAL contrary to the facts and law, the district court reversed and reinstated DCFS's finding. The district court signed its judgment on December 4, 2019, and Ms. Caston appealed.

## STANDARD OF REVIEW

The Louisiana Administrative Procedure Act (LAPA), LSA-R.S. 49:964G, governs the judicial review of a final decision in an agency adjudication and provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;

2

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of the evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Any one of the six bases listed in the statute is sufficient to modify or reverse an agency determination. **Mid-City Automotive, LLC v. Louisiana Department of Public Safety**, 19-1219 (La.App. 1 Cir. 5/11/20), 304 So.3d 457, 461. The LAPA further specifies that judicial review shall be conducted by the court without a jury and shall be confined to the record. LSA-R.S. 49:964F.

When reviewing an administrative final decision, the district court functions as an appellate court. **Mid-City Automotive**, 304 So.3d at 461. Once a final judgment is rendered by the district court, an aggrieved party may seek review by appeal to the appropriate appellate court. LSA-R.S. 49:965. On review of the district court's judgment, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. **Carpenter v. State, Dept. of Health and Hospitals,** 05-1904 (La.App. 1 Cir. 9/20/06), 944 So.2d 604, 608, writ denied, 06-2804 (La. 1/26/07), 948 So.2d 174. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. **Our Lady of Lake Roman Catholic Church, Mandeville v. City of Mandeville, Planning & Zoning Comm'n.,** 13-0837 (La.App. 1 Cir. 2/3/14), 147 So.3d 186, 189. Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in LSA-R.S. 49:964G.

3

## DISCUSSION

Louisiana Children's Code Article 616, provides, in pertinent part:

A. The department shall maintain a state repository of all reports of abuse and neglect. ...

B. Within the state repository, the department shall maintain a state central registry of certain justified reports of abuse and neglect as set forth in rules promulgated by the department. The name of an individual who was placed on the state central registry as a perpetrator of abuse or neglect prior to the effective date of Article 616.1.1 shall not be released outside of the department until that individual's administrative appeals are exhausted.

Children's Code Article 616.1.1 provides:

A. When a report alleging abuse or neglect is determined to be justified by the department, the individual who is or was the subject of the determination may make a formal written request to the division of administrative law for an administrative appeal of the justified determination, in accordance with the procedures set forth in Title 67 of the Louisiana Administrative Code.

B. The department shall promulgate, in accordance with the Administrative Procedure Act, all rules and regulations necessary to implement the provisions of this Article.

Article 616.1.1 was added by Acts 2017, No. 348, § 1. Section 6 of the Act provided that "[t]his Act shall become effective upon promulgation and publication by the Department of Children and Family Services of the final rules to implement the provisions of this Act." The rules became effective in 2018.

Louisiana Administrative Code Title 67, Part V, § 1111, was promulgated in accordance with Act 348 of 2017, Children's Code Article 616.1.1, and 42 USC §9858f.[1]

LAC 67:V.1111 provides, in relevant part:

A. The Department of Children and Family Services (DCFS) establishes an administrative appeal process with the Division of Administrative Law (DAL). The purpose is to provide individuals the right to appeal DCFS Child Protective Services investigation findings of justified/valid. Any individual with a justified/valid finding of child abuse or neglect may request an appeal of their justified/valid finding directly with DAL.

B. Individuals with justified/valid findings in an investigation prior to August 1, 2018, will have the right to an administrative appeal of any/all of their DCFS findings of justified/valid. When a request for [a state central registry] clearance is received by DCFS, or DCFS verifies that an individual has a justified/valid finding, and the individual is listed as a perpetrator with a justified/valid finding of abuse or neglect in an

---

[1] Pursuant to the Child Care and Development Block Grant Act, "child care staff members (including prospective child care staff members) of child care providers" are required to undergo criminal background checks. See 42 USC §9858f.

4

investigation prior to August 1, 2018; the individual will be notified in writing of their right to an administrative appeal. The individual will have 20 days from the date of the written notification to request an appeal through DAL.

Sometime prior to April 8, 2019, DCFS was sent a state central registry clearance request from the Louisiana Department of Education regarding Ms. Caston. Consequently, DCFS sent Ms. Caston notice, on April 8, 2019, of a justified/valid finding of death by neglect and of her right to an administrative appeal.

DCFS administrative hearings are governed by LAC 67:V.1111.F, which provides:

> F. The following provisions shall be applicable to all proceedings related to an administrative appeal request.
>
> * * *
>
> 5. DCFS will bear the burden of proving by a preponderance of the evidence that the finding of justified/valid should be upheld.

In her appeal, Ms. Caston argues that the DAL correctly determined that DCFS failed to prove its valid finding of death by neglect against Ms. Caston by a preponderance of the evidence. Therefore, according to Ms. Caston, the district court's judgment should be reversed.

At the time of the DCFS investigation in 1992, LSA-R.S. 14:403 provided, in part:

> G. Investigation and Disposition of Reports.
>
> (1) Definitions. For the purpose of screening and investigation, the following terms shall mean:
>
> (a) "Child abuse or neglect" is any condition presenting a substantial risk of harm to a child's health or welfare as a result of conditions apparently created **or tolerated by his parent** or caretaker.

(Emphasis added). DCFS submitted sixteen exhibits at the administrative hearing to support the valid finding of death by neglect, including the April 8, 2019 notice to Ms. Caston; DCFS policy 4-515[2]; DCFS policy 4-535[3]; DCFS intake, case recording, and

---

[2] In 1992, Policy 4-515 set forth the general factors to consider in conducting investigations in families and provided that as to a death allegation, verification was required by a physician, coroner, or law enforcement. The exhibits submitted included verifications by all three.

[3] In 1992, Policy 4-535 outlined the standards for investigative decisions, including the standard for a valid finding:

> When determining a final finding status of valid abuse/neglect, the worker/supervisor should review the information gathered during the investigation carefully, and use the following standard: The available facts when viewed in light of surrounding circumstances would cause a reasonable person to believe that (1) a physical or mental injury to a child has endangered his health or emotional well being; and (2) The direct or

5

investigative summary forms and reports; Orleans Parish Police Department reports; medical records; the autopsy report; Orleans Parish Criminal District Court records; and a clinical psychological examination of Ms. Caston. Shonda Henderson, a DCFS consultant for the Protective Services Review Team and a nineteen-year employee with DCFS, testified regarding the documents created as a result of the investigation.

Ms. Caston also testified at the hearing. She stated that about a year and a half before C.C's death, she and her two children moved into the New Orleans apartment of her boyfriend, Douglas Sumner.[4] According to Ms. Caston, at some point in their relationship, Mr. Sumner became abusive towards her. Ms. Caston also testified that she had seen Mr. Sumner physically abuse C.C. by witnessing him hit C.C.[5]

Ms. Caston testified that, during the evening of March 29, 1992, she told C.C. to take a bath. After checking on C.C., Ms. Caston left the bathroom to go to the kitchen. Thereafter, she heard C.C. screaming, and upon returning to the bathroom, saw Mr. Sumner holding C.C. under the hot water from the shower. C.C. was standing with her back to the shower, and the water was running down her back. Ms. Caston stated that she tried to get Mr. Sumner to stop, but he would not, and that she was trying to protect her toddler from the hot water at the same time. Ms. Caston testified that she tried for fifteen to twenty minutes before she could get the water turned off. Mr. Sumner then took C.C. out of the tub and laid her down on her bed. Ms. Caston testified that she the then patted [C.C.] dry and got some ice "to make sure [C.C. was] alert."[6] Ms. Caston also stated that she tried to call 911, but the telephone did not

indirect cause of the alleged or other injury, harm or extreme risk of harm is a parent or person responsible for the child's care as defined in R.S. 14:403.

If the answers to the above two statements are "yes", then the allegation(s) is valid.

[4] The older child, C.C., was born on October 8, 1984, and W.C. was born on July 7, 1990. As a result of her relationship with Mr. Sumner, Ms. Caston had a third child, E.C., on February 22, 1992.

[5] On cross examination, Ms. Caston was asked:

    Q. Is it possible that he would have abused [C.C.], is my question
    A. Yes, it is possible.
    Q. And are you aware that, since it's possible, that you tolerated it?
    A. I did well, yes. I'll say that.
    Q. And so my question is, did you allow him to abuse [C.C.]?
    A. No, no.

[6] When Ms. Caston was interviewed on March 30, 1992, by a DCFS worker and a New Orleans Police Department child abuse officer, she stated that sometime between 5:00 and 6:00 p.m., after telling C.C.

work, so she and Mr. Sumner brought C.C. to the emergency room at Children's Hospital, where they stated that C.C. had suffered a seizure. Due to the severity of the burns, C.C. was admitted to the pediatric intensive care unit.

After the doctors examined C.C., they discovered approximately one-week old burns to C.C.'s buttocks and feet. The examining physician reported that C.C. had first and second degree burns to the tops of both feet and buttocks and lacerations to the thumb and three fingers on her left hand. C.C. was also severely dehydrated. Once C.C. began to be re-hydrated, more burns began to appear. The doctor concluded that the burns and severe dehydration had occurred some time before March 29, 1992. In addition to the burns and severe dehydration, the doctors also reported that C.C. was suffering from malnutrition. C.C. died on April 1, 1992, due to multi-system organ failure secondary to the burns over 50% to 60% of her body.

Children's Hospital notified the New Orleans Police Department (NOPD) and DCFS regarding C.C.'s condition on March 29, 1992, and they began a joint investigation.[7] The hospital staff informed NOPD and DCFS that C.C.'s burns were inconsistent with Ms. Caston's and Mr. Sumner's explanation of how C.C. received her injuries. Ms. Caston and Mr. Sumner were then interviewed by DCFS and NOPD, and again there were inconsistencies in their explanation of the events of March 29, 1992.

During the investigation, NOPD and DCFS also discovered that C.C. was able to tell the attending nurses, during periods of alertness, that Mr. Sumner had regularly abused her, including breaking her fingers and beating her with an umbrella. On one occasion, C.C. was able to relay that Mr. Sumner slapped C.C. on her face and then picked her up and threw her across the room into a wall. Further, one of the nurses attending to C.C. overheard Ms. Caston say to C.C., "It hurts us to see you this wa[y]. I didn't know it was this bad." Additionally, an NOPD detective tested the water temperature at the apartment and discovered that it was up to 130 degrees in ten

---

to start running her bath water, she went to check on C.C. and saw C.C. standing in the bathtub looking like she was having a seizure. Ms. Caston again stated that C.C. had a seizure during another interview on March 31, 1992. At the administrative appeal hearing, when asked why she did not tell the physicians at the hospital that Mr. Sumner was holding C.C. down in the tub, Ms. Caston responded that no one asked her.

[7] DCFS began its investigation for abuse/neglect, but upon C.C.'s death converted it into an investigation for death/neglect.

seconds and up to 148 degrees in sixty seconds. The hot water heater was set on the maximum setting.[8]

The basis of this appeal is the valid finding of death by neglect against Ms. Caston. Based on our review of the record and considering the applicable law and rules governing these proceedings, we find that DCFS proved by a preponderance of the evidence that the valid finding of death by neglect should be upheld. See LAC 67:V.1111.F. The record establishes that Ms. Caston, at a minimum, tolerated a condition that lead to the death of her child. The hospital staff informed law enforcement that C.C.'s burns were inconsistent with Ms. Caston's and Mr. Sumner's explanations. Ms. Caston did not report the burns to the hospital, and she and Mr. Sumner reported that they knew nothing about the old burns or the cuts on C.C.'s fingers. The record, including the statement made by Ms. Caston to C.C. and overheard by one of C.C.'s nurses, indicates that Ms. Caston tolerated the abuse that ultimately led to C.C.'s death.[9] Consequentially, we find no error by the district court in reversing the DAL's decision and reinstating DCFS's valid finding of death by neglect against Ms. Caston.[10]

## CONCLUSION

Considering the foregoing, we affirm the December 4, 2019 judgment of the district court that reversed the decision of the Division of Administrative Law and reinstated the valid finding of death by neglect by the Department of Children and Family Services against Ms. Caston. The costs of this appeal are assessed to Sonja Caston.

**AFFIRMED.**

---

[8] Ultimately, Mr. Sumner entered a guilty plea to one count of manslaughter and one count of attempted first-degree murder. He was sentenced to serve twenty-one years at hard labor with the Louisiana Department of Corrections on the manslaughter count and forty years at hard labor on the attempted first-degree murder count.

[9] We note that Ms. Caston plead guilty to manslaughter. She was sentenced to serve ten years at hard labor with the Louisiana Department of Corrections, but the sentence was suspended, and Ms. Caston was placed on five-years probation.

[10] Ms. Caston also maintains that the district court erred in finding that the DAL misapplied the law and that the DAL abused its discretion. Having found that DCFS proved by a preponderance of the evidence that the allegation of death/neglect was a valid/justified finding, we need not discuss Ms. Caston's remaining assignments of error.

8