DRAKE, J.
1 ?The property owner, Our Lady of the Lake Roman Catholic Church, Mandeville, Louisiana (“OLL”), appeals a judgment affirming an action of the City of Mandeville Planning and Zoning Commission (“Zoning Board”), which denied OLL’s application for a zoning permit. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

OLL owns property located in the City of Mandeville’s (“City”) “Old Mandeville” business district. Currently, the OLL campus includes a sixty-year-old church building, school buildings, a multi-purpose facility, an athletic field, administrative and service auxiliary buildings, a rectory, and parking lots. Pursuant to the City’s Comprehensive Land Use Regulation Ordinance (“CLURO”), the property owned by OLL is zoned “B-3 Old Mandeville Business District,” a mixed business and residential district that also includes institutional and governmental uses.[1] For the uses contemplated by OLL, which include religious assembly and educational facilities,[2] the B-3 district permits a “Z-Zoning permit use — [a] use permitted-conditional *188 ly in the [B — 3] district with issuance of a zoning permit by the zoning board .. .”.[3]
In 1999, following the submission and review of its site plan, OLL obtained a permit from the Zoning Board to construct two buddings on its campus: a multipurpose facility (Chotin Center) and a building to replace the existing library and classroom building (Parish Life Center).[4] In the years following the additions of the buildings approved by that permit, OLL experienced expanded church membership and a high volume of attendance at its weekly services. To |saccommodate churchgoers, OLL holds mass in the multipurpose facility, as well as in the church. After studying the feasibility of expanding the existing church building, OLL decided to build a new, larger church budding to accommodate its growth. In 2011, OLL completed design and construction plans for the new church. On June 30, 2011, OLL filed an application for a zoning permit [5] with the City that sought to amend its previously-issued 1999 zoning permit by expanding, reconfiguring, and modifying the development site for construction of its new church budding, additional parking lots, and school facilities.
After the filing of OLL’s application, the City’s Design Review Committee held a design review session on July 22, 2011. Thereafter, the more formal process of considering the application under the CLURO’s site plan review process began. After advertising in accordance with law, the Zoning Board held public hearings on this permit application on July 26, August 9, September 7, and October 5, 2011.[6] At the October 5, 2011 hearing, the Zoning Board denied OLL’s zoning permit application and provided reasons for the denial orally at the meeting, as well as in a decision letter dated October 14, 2011. The Zoning Board based its denial of OLL’s application on seventeen considerations. Further, after concluding that OLL had not been completely complying with the 1999 permit, the Zoning Board revised portions of the 1999 permit relative to building use to allow for the continued use of various buildings that were otherwise in violation of the 1999 permit provisions; however, the Zoning Board directed OLL’s compliance with those provision of the 1999 permit relative to the loading and unloading of buses and students, and to parking.
Following the decision of the Zoning Board, OLL filed a petition for a writ of certiorari with the district court, seeking an order declaring .that the Zoning JjBoard’s denial of its application for a zoning permit was null and granting the requested permit.[7] The district court heard arguments on April 19, 2012, and took the matter under advisement. By judgment dated October 10, 2012, the district court affirmed the Zoning Board’s denial of OLL’s application for a zoning permit, but vacated and set aside the Zoning Board’s order with regard to the imposition of new use restrictions and conditions on the 1999 zoning permit. In its written reasons for judgment, the district court held that OLL’s site plan failed to meet the CLURO’s minimum requirements relative to the number and location *189 of parking spaces. OLL now appeals the judgment of the district court on judicial review of this administrative matter.[8]

STANDARD OF REVIEW

On judicial review of a decision by an administrative agency, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court’s judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Maraist v. Alton Ochsner Medical Foundation, 02-2677 (La.App. 1 Cir. 5/26/04), 879 So.2d 815, 817. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. Smith v. State, Department of Health and Hospitals, 39,368 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, 739, writ denied, 05-1103 (La.6/17/05), 904 So.2d 701.
|BOur review of the district court’s judgment is governed by Louisiana Revised Statutes 49:964(G), which provides:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1)In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.

LAW AND DISCUSSION

The first two assignments of error raised by OLL are related. First, OLL argues that the Zoning Board erred in following the requirements of the CLURO when it evaluated OLL’s zoning permit application. OLL contends that the Zoning Board exceeded its limited jurisdiction in denying OLL’s zoning permit, arguing that the Zoning Board’s jurisdiction was strictly limited to a determination of *190 whether OLL’s proposal met the established, objective criteria of the CLURO for a use “permitted by-right.”[9] Second, OLL avers the Zoning Board erred by evaluating OLL’s zoning permit application using CLURO criteria for a conditional use or zoning variance, not a permitted use. OLL argues that the | (⅞Zoning Board arbitrarily and capriciously denied its application based on the personal opinions of board members and requirements not found in the CLURO. OLL also contends that the Zoning Board relied on the City’s Comprehensive Plan and B-3 Area Plan, which are not law. In order to address these errors assigned by OLL, we must determine whether the Zoning Board followed the criteria set forth in the CLURO in evaluating and denying OLL’s zoning permit application based on the zoning designation of the property and what uses are permitted therein by the CLURO.
Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities. The purpose of zoning is to reduce or eliminate the adverse effects that one type of land use might have on another. Jenkins v. St Tammany Parish Police Jury, 98-2627 (La.7/2/99), 736 So.2d 1287, 1290. Article VI, Section 17 of the Louisiana Constitution gives local governments broad powers to adopt regulations for land use, zoning, and historic preservation. It provides:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
Louisiana Revised Statutes 33:4721 also confers upon local governments the authority to enact zoning regulations. It states, in pertinent part:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict the height, number of stories, and size of structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial preview on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
In order to exercise these zoning powers, the legislative body of the municipality must appoint a zoning commission. La. R.S. 33:4726(A). The function of the zoning commission is to propose to the legislative body of the municipality a set of recommendations concerning the boundaries of zones and the regulations and restrictions to be enforced therein. If a planning commission exists, that commission automatically becomes the zoning *191 commission. La. R.S. 3S:4726(C). When the planning commission serves these dual roles, it must hold separate meetings and keep separate records concerning its function as the zoning commission. La. R.S. 33:106(D); King v. Caddo Parish Comm’n, 97-1873 (La.10/20/98), 719 So.2d 410, 417; see also Jenkins, 736 So.2d at 1291. The zoning commission must give notice to the public and hold public hearings on proposed recommendations before they can be transmitted to the legislative body of the municipality. Once the legislative body receives the recommendations of the zoning commission, it must conduct a hearing on the proposed recommendations and give the public adequate notice of the hearing. La. R.S. 33:4724(B); La. R.S. 33:4726(A).
Zoning regulations must be uniformly applied within each district or zone of the municipality. La. R.S. 33:4722(C); Jenkins, 736 So.2d at 1291 (applying La. R.S. 33:4780.41, a parallel statute for parishes). Such regulations and procedures must be construed in favor of the use proposed by the owner. D'Argent Properties, LLC v. City of Shreveport, 44,457 (La.App. 2 Cir. 6/24/09), 15 So.3d 334, 338, writ denied, 09-1726 (La.11/6/09), 21 So.3d 308, citing Wright v. DeFatta, 244 La. 251, 152 So.2d 10 (1963); City of West Monroe v. Ouachita Ass’n for Retarded Children, 402 So.2d 259 (La.App. 2d Cir.1981). The actions of a|szoning commission will not be disturbed on judicial review unless the court finds that they were plainly and palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power. La. R.S. 33:4726; D’Argent Properties, 15 So.3d at 338; King, 719 So.2d at 418; see also Jenkins, 736 So.2d at 1291. The test of whether a zoning board’s action is arbitrary and capricious is whether the action is reasonable under the circumstances. King, 719 So.2d at 418.
Pursuant to the authority granted to local governments, the City adopted the CLURO, which governs the building of all structures and use of all land within the incorporated area of the City.[10] No structure or land may be used, erected, reconstructed, converted, moved, or structurally altered unless in conformity with the regulations as set forth in the CLURO.[11] As stated, the property owned by OLL is located in the B-3 Old Mandeville Business District. OLL uses its property for religious assembly and education facilities. In accordance with the Table of Permitted Uses by Zoning District, the land use classification for Public and Private Primary Education, Secondary Education, and Religious Assembly require zoning permit approval.[12] The use classification in the B-3 District for religious assembly and education facilities is “Z-Zoning permit use— [a] use permitted-eonditionally in the [B-3] district with issuance of a zoning permit by the zoning board in accordance with procedures as provided in Article 4, based on standards applicable to the use.”[13] As noted in the Table of Permitted Uses by Zoning Districts, all uses requiring zoning permits must follow the site plan review procedure outlined in CLURO 4.2.3.
| ¡/Through its 1999 zoning permit application, OLL obtained the required approval of its site plan from the Zoning Board to undertake a building and renovation project, including replacing the then-existing library and school building (which resulted in the construction of the Parish Life Center), constructing a multi-purpose building *192 (which resulted in the Chotin Center), and securing a variance from the Zoning Board as to the elevation at which these proposed constructions would be built. OLL’s zoning application is a request for a modification of the 1999 zoning permit (rather than an initial development permit request), as was highlighted by the Director of the Mandeville Department of Planning and Development at the July 26, 2011 public work session of the Zoning Board:
The procedural requirements for the site plan review approval shall apply to an application for modification, expansion or other changes in an approved site plan. The proposed site plan modifies and expands the existing site plan that was included on the zoning permit in case Z99-2-4 and that site plan was prepared by Piazza Architecture and Planning dated October 31st, 1998 and revised through February 12th of 1999. This proposed site plan that’s proposed under this case, you know, would replace the existing approved site plan and the conditions of the zoning permit approval, you know, as of 1999. This approval, the 1999 approval, allowed for the construction of the Chotin Center, which is a multipurpose building, the Parish Life Center and other improvements on the site.
The instant case is a situation in which OLL seeks a use permitted-conditionally, in the designated zoning district, with issuance of a zoning permit by the Zoning Board. This type of use is not a use by-right, nor is it a variance, special exception, administrative use, conditional use, or a request for a re-zoning. A use by-right should be presumptively valid and approved. See Wright, 152 So.2d at 14. For a board to deny such a use, the burden on the city is much higher. On judicial review, a board’s decision to deny a use by-right is subject to strict scrutiny, not the normal' standard of broad discretion applied to variance cases. D’Argent Properties, 15 So.3d at 340. If an owner seeks to alter the established | ^zoning, the commission or governing body must apply its great discretion and, as a result, the courts will not “take issue with the council.” See King, 719 So.2d at 416. Here, the use sought by OLL does not raise the Zoning Board’s discretion to “great,” as OLL’s use is not conditional, nor is OLL seeking a re-zoning of its property. Also, since the use is not permitted by-right, the Zoning Board’s discretion is not subject to strict scrutiny.
The Zoning Board is tasked by the CLURO with reviewing and evaluating OLL’s application in accordance with the procedure for obtaining a zoning permit, known as the site plan review procedure.[14] The criteria for reviewing and evaluating a proposed site plan are set forth in CLURO 4.3.2.9, which requires the Zoning Board to review an applicant’s site plan for consistency with all applicable regulations of the CLURO. Prior to approving a site plan, the Zoning Board must find that the proposed use and site development, together with any modifications, will be compatible with the existing conforming or permitted uses on adjacent sites or sites across from the proposed development site; that any required modifications to the site plan are reasonable and are the minimum necessary to minimize potentially unfavorable impacts; and that the site plan complies with the CLURO.[15] The use proposed by an owner in the B-3 district must at least meet the minimum requirements of CLU-RO 7.5.10.5-6, in addition to all other applicable regulations of the CLURO and *193 other laws of the City and state.[16] If the site plan meets the minimum requirements of the CLURO, a permit must be issued, but modifications can be required in order to mitigate any unfavorable impacts. If the site plan does not meet the minimum requirements of the CLURO, the Zoning Board, by right, In may deny the application. As the district court succinctly stated, “the plan either satisfies the objective criteria in the regulations or it doesn’t.”
The Zoning Board denied OLL’s permit application and cited seventeen reasons for its denial. Among the major concerns of the Zoning Board regarding OLL’s site plan were problems and inconsistencies with the CLURO-mandated calculation of on and off-site parking spaces on the OLL campus. In its reasons for denial, the Zoning Board stated:
There is no question ... that there are serious parking and traffic problems not only in the immediate area of the [c]hurch and school, but also stretching all the way to and extending down Lake-shore Drive for many blocks.
[[Image here]]
In regards to parking, the [Zoning Board] has been shown plans that show enough on-site and allowable (by code) adjacent street parking, to meet CLU-RO minimum requirements, assuming no major concurrent demands for [c]hurch and/or school functions.... Those CLURO minimum requirements would not be met in certain overlapping use conditions. Based on information given the [Zoning Board], it is difficult to assess how often various demand levels for on-street parking by the [e]hurch and school users will occur. This is made more difficult by the known fact that despite the availability of on-site parking spaces, most people park on the street if it is closer and more convenient for them. There is no question that parking is currently an issue in the area around the [e]hurch....
[[Image here]]
A further complication in the [Zoning Board’s] calculation of an appropriate number of on-site parking spaces is the uncertainty of the use of various buildings on the site. [OLL], for example, says that the old [c]hurch building will be deconsecrated and used for undefined miscellaneous functions at undefined times. For parking calculations, [OLL] assumes it is an “accessory structure” with no additional parking requirements. It is not realistic to assume that a building of approximately 7000 square feet that can hold 500 people for any number of purposes will not be taken into consideration by the [Zoning Board] when determining parking requirements....
The CLURO sets the number of required parking spaces based upon the principal use for the affected property.[17] In OLL’s case, those uses are religious | ^assembly and education facilities. The CLURO requires parking for the education facilities to be the greater of either two parking spaces per classroom plus one parking space per faculty and administration staff member, or the required parking spaces for any auditorium or gymnasium facility on site.[18] This formula results in 153 required parking spaces for OLL’s private school, including the Chotin Center. The parking required for the new church building is one parking space per each four fixed seats in the primary assembly area, or one parking space per fifty square feet of assembly areas where there *194 are no fixed seats, but not less then twenty-parking spaces.[19] This formula results in 257 required spaces for the new church building. OLL’s site plan provides for 385 parking spaces.
CLURO 9.1.1.4 authorizes off-street parking facilities for combinations of mixed uses. The total number of spaces required is the sum of the separate requirements for each- nonresidential use, if computed separately. CLURO 9.1.1.13 allows for an adjustment in the total parking requirements for separate uses located on the same site or adjoining sites; however, the parking spaces adjusted in this fashion must be located in a common, contiguous parking facility.[20] In determining whether to approve an adjustment to the required parking spaces for a mixed-use development site, the Zoning Board must consider all relevant facts including: (i) the characteristics of each use and the differences in projected peak parking demand, including days or hours of operation; (ii) potential reduction in vehicle movements afforded by multipurpose use of the parking facility by employees, customers, or residents of the uses served; (iii) potential improvements in parking facility design, circulation, and access afforded by a joint parking ^facility; and (iv) the report and recommendation of the city planner.[21] Thus, the CLURO’s regulatory scheme for a multi-use development site requires that the parking for each separate use be calculated separately, then added together to determine the minimum parking requirements. Consequently, the CLURO requires OLL’s site plan to provide for at least 410 parking spaces (153 school parking spaces + 257 new church building parking spaces). In addition, OLL proposes to use the old church building as a school assembly area. That use is similar to an auditorium, adding square footage to the school and requiring additional parking spaces.
OLL’s site plan has parking spaces over five city squares and numerous city lots. That is not consistent with the requirements for off-street parking facilities for a mixed-use development under the CLU-RO. The Zoning Board concluded that OLL’s site plan failed to meet the CLU-RO’s minimum requirements relative to the number of parking spaces and their location. Although the Zoning Board has the authority to adjust the number of spaces and their location, it declined to do so. Therefore, the Zoning Board’s denial of the zoning permit application was proper.
In its final assignments of error, OLL contends that the district court erred in failing to conduct a de novo review of the record, relied on arguments it alleges were not made before the Zoning Board in the public hearings, and acted arbitrarily and capriciously in failing to reverse the Zoning Board’s decision. As stated previously, on review of the district court’s judgment, we owe no deference to the factual findings or legal conclusions of the district court. Maraist, 879 So.2d at 817. Thus, we review the findings and decision of the administrative agency, here, the Zoning Board, and not the decision of the district court. Smith, 895 So.2d at 739. Therefore, these assignments of error are without merit.
| uDECREE
Therefore, based on our review of the record and considering the applicable law and rules governing these proceedings, we affirm the judgment of the district court *195 on judicial review of this administrative matter. All costs of this appeal are cast to Plaintiff/Appellant, Our Lady of the Lake Roman Catholic Church, Mandeville, Louisiana.
AFFIRMED.

. CLURO 7.2.1, 7.5.10.

. CLURO 6.3.18, 6.3.19, 6.3.22.

. CLURO 7.7, 7.7.1, 7.7.2.

. The Zoning Board also approved OLL’s variance request to allow the proposed buildings to be constructed at a higher elevation.

. OLL revised its application on August 31, 2011.

. The public hearing scheduled on August 9, 2011, was a work session, wherein the Zoning Board took no vote on the application.

. See CLURO 4.3.2.8(2); La. R.S. 33:4727(E).

. The district court vacated the conditions imposed by the Zoning Board on OLL regarding its alleged non-compliance with its 1999 zoning permit, holding that the CLURO provides a procedure to institute an action to prevent the violation of a zoning permit. That procedure requires notice and the opportunity to be heard relative to the alleged violations. Here, the Zoning Board acted on the alleged violations as part of its consideration of OLL’s zoning permit application, which the district court held was improper. The City concedes that it did not cross-appeal that ruling, and it is therefore not before this court.

. CLURO 7.7.2.

. CLURO 1.2.2.

. CLURO 6.3.18-19, 6.3.22, 7.7.

. CLURO 4.1.1.

. CLURO 7.7.1-2.

. CLURO 4.3.2.1-2.

. CLURO 4.3.2.10.

. CLURO 7.5.

. CLURO 9.1.4.

. CLURO 9.1.

. CLURO 9.1.4.

. CLURO 9.1.1.13(a).

.CLURO 9.1.1.13.1(b).