STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0292

NEW CINGULAR WIRELESS, PCS, LLC

VERSUS

CITY-PARISH OF EAST BATON ROUGE

Judgment Rendered: __DEC 3 0 2021__

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 697461

The Honorable Donald R. Johnson, Judge Presiding

* * * * *

Gregory E. Bodin
Derbigny W. Daroca
Baton Rouge, Louisiana

Attorneys for Plaintiff/Appellant
New Cingular Wireless, PCS, LLC
d/b/a AT&T Mobility

Anderson O. "Andy" Dotson, III
Parish Attorney
David M. Lefeve
A. Gregory Rome
Sarah S. Monsour
Courtney Humphrey
Special Assistant Parish Attorneys
Baton Rouge, Louisiana

Attorneys for Defendant/Appellee
City of Baton Rouge/Parish of
East Baton Rouge

John Stone Campbell, III
Michael A. Grace
Baton Rouge, Louisiana

Attorneys for Intervenor/Appellee
Mosely Holdings, LLC

* * * * *

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

This appeal is taken from the district court's decision affirming the City of Baton Rouge/Parish of East Baton Rouge Board of Appeals' decision declining to reverse a revocation notice of a permit for the installation of small cell wireless equipment. For the reasons that follow, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

New Cingular Wireless, PCS, LLC d/b/a AT&T Mobility (AT&T) applied for a permit to install small cell wireless equipment, including a pole and antenna (cell tower), at approximately 55 locations in Baton Rouge, Louisiana. The City of Baton Rouge/Parish of East Baton Rouge (City/Parish) issued the permit on October 3, 2018 (permit), which included the location of 9551 Antioch Road (Antioch location) at the southeast corner of Antioch Road and Columns Way. In effect at this time was City/Parish Ordinance No. 16657, which adopted Title 2, Chapter 9 of the Code of Ordinances, entitled Small Wireless Facilities numbered Section 2:380-389 (Small Wireless Facilities Ordinance). AT&T installed the cell tower at the Antioch location in December 2019. Thereafter, in undated email correspondence from Michael P. Wich, a Building Official with the Department of Development of the City/Parish (Building Official), which AT&T received on March 23, 2020, the City/Parish revoked and terminated the permit issued at the Antioch location, stating that this area was publicly dedicated with certain stipulations that prevented the issuance of the permit (Revocation Notice). The Revocation Notice stated that all equipment and structures "shall be removed by **May 20, 2020**." (Emphasis in original).

On April 3, 2020, AT&T, alleging that the Building Official improperly revoked the permit, appealed to the Board of Appeals for the City/Parish (Board of Appeals), pursuant to the City/Parish Code of Ordinances, Title 8, Sections 8:1 and 8:2, which adopted the International Building Code (IBC) and International

2

Residential Code (IRC) with certain amendments. Section 112.1 of the IRC and Section 113.1 of the IBC[1] permit the establishment of a Board of Appeals "to hear and decide appeals of orders, decisions[,] or determinations made by the building official relative to the application and interpretation of this code." Title 8, Chapter 1, Section 8.2 of the City/Parish Code of Ordinances amended Section 112 of the IRC and Section 113 of the IBC to establish certain membership, notices of violations, penalties, and other issues.

---

[1] At the time of this permit, the 2015 IBC and IRC were in effect. Section 112 of the IRC provided:

**BOARD OF APPEALS**

**R112.1 General.** In order to hear and decide appeals of orders, decisions or determinations made by the building official relative to the application and interpretation of this code, there shall be and is hereby created a board of appeals. The building official shall be an ex officio member of said board but shall not have a vote on any matter before the board. The board of appeals shall be appointed by the governing body and shall hold office at its pleasure. The board shall adopt rules of procedure for conducting its business, and shall render decisions and findings in writing to the appellant with a duplicate copy to the building official.

**R112.2 Limitations on authority.** An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply or an equally good or better form of construction is proposed. The board shall not have authority to waive requirements of this code.

**R112.3 Qualifications.** The board of appeals shall consist of members who are qualified by experience and training to pass judgement on matters pertaining to building construction and are not employees of the jurisdiction.

**R112.4 Administration.** The building official shall take immediate action in accordance with the decision of the board. [Emphasis in original omitted].

Section 113 of the IBC provided:

**BOARD OF APPEALS**

**[A] 113.1 General.** In order to hear and decide appeals of orders, decisions or determinations made by the building official relative to the application and interpretation of this code, there shall be and is hereby created a board of appeals. The board of appeals shall be appointed by the applicable governing authority and shall hold office at its pleasure. The board shall adopt rules of procedure for conducting its business.

**[A] 113.2 Limitations on authority.** An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply or an equally good or better form of construction is proposed. The board shall not have authority to waive requirements of this code.

**[A] 113.3 Qualifications.** The board of appeals shall consist of members who are qualified by experience and training to pass on matters pertaining to building construction and are not employees of this jurisdiction. [Emphasis in original omitted].

3

On May 28, 2020, the Board of Appeals met and declined to reverse the Revocation Notice. On June 26, 2020, AT&T filed a Petition for Judicial Review and Injunctive Relief (Petition) in the district court pursuant to La. R.S. 33:4780.47(A), which provides that any party aggrieved by any decision relative to any officer, department, board, or bureau of the parish may present a petition to the district court of the parish in which the property affected is located within thirty days after the filing of the decision in the office of the board. AT&T sought the reversal of the Revocation Notice and injunctive relief.

The City/Parish opposed the Petition asserting that the Antioch location was included in a larger donation of property evidenced in a Donation of Right of Way and Dedication of Servitudes (Donation) from Mosely Holdings, LLC (Mosely Holdings) on July 30, 2014.[2] The City/Parish claimed that after the permit application was submitted, it was informed that the cell tower violated the Planned Unit Development (PUD), which requires all utilities to be underground. The City/Parish maintained that it informed AT&T that the Antioch location was subject to certain stipulations and that the City/Parish had properly revoked the permit pursuant to IBC Section 105.6, which authorizes the City/Parish to revoke permits when the permit was issued in error or on the basis of incorrect, inaccurate, or incomplete information.

Mosely Holdings intervened in the present matter asserting that the cell tower is located on property donated by Mosely Holdings to the City/Parish for the construction of Antioch Road, which runs through the Long Farm Village

---

[2] We first note that the City/Parish attached to its opposition a Donation of .306 acres from RKL Farm, LLC containing parcels 9-1, 10-1, 12-2, 13-1, and 13-2, which was recorded in the City/Parish mortgage records at Orig. 241 Bndl. 12597 on August 7, 2014. However, the intervenor, Mosely Holdings, LLC, attached a Donation of 7.397 acres containing parcels 7-1, 8-2, and 12-1, which was recorded in the City/Parish mortgage record at Orig. 245 Bndl. 12597 on August 7, 2014. AT&T refers to the Donation in its Petition as the one recorded at Orig. 245 Bndl. 12597. Therefore, any reference to the Donation is to the property donated by Mosely Holdings, LLC where the cell tower is located.

development, a PUD. Mosely Holdings contended that the Donation limited the servitudes granted to the City/Parish for the sole purpose of completing the extension of Antioch Road and for personal servitudes on either side of Antioch Road to slope for drainage. Mosely Holdings also alleged that the PUD map corresponding to the Long Farm Village development expressly requires AT&T service to be "via underground conduits and wiring."

The parties entered into an agreement rendering the request for injunctive relief moot. Thereafter, the district court held a hearing on August 18, 2020, where all parties agreed to the introduction of all exhibits previously filed, including all affidavits in lieu of live testimony.[3] Following the hearing, the district court requested that the parties file recommendations for findings of fact and conclusions of law and took the matter under advisement. On October 20, 2020, the district court rendered a judgment adopting the Proposed Findings of Facts and Conclusions of Law submitted by the City/Parish, denying the Petition, finding the permit was legally revoked and the City/Parish's revocation was neither arbitrary nor capricious, and dismissing the Petition. It is from this judgment that AT&T appeals.

## ASSIGNMENTS OF ERROR

AT&T asserts that the Board of Appeals erred in affirming the revocation of a validly issued permit, claiming (1) that the dedication of the road conveyed ownership to the public; (2) that the Declaration of Covenants, Conditions, and Restrictions for Long Farm Subdivision (Long Farm Restrictions) only require utilities be put underground "whenever reasonably possible"; (3) that the Revocation Notice violated numerous laws; and (4) that the Revocation Notice violated AT&T's property rights. Furthermore, AT&T claims that the action of the Building Official was arbitrary and capricious.

---

[3] Under La. R.S. 33:4727(E)(4), a district court may take additional testimony or receive additional evidence as part of its consideration of an appeal. *Esplanade Ridge Civic Association v. City of New Orleans,* 2013-1062 (La. App. 4th Cir. 2/12/14), 136 So. 3d 166, 169.

5

## APPLICABLE LAW

### Standard of Review

On judicial review of a decision by an administrative agency, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. *Our Lady of Lake Roman Catholic Church, Mandeville v. City of Mandeville, Planning & Zoning Commission*, 2013-0837 (La. App. 1st Cir. 2/3/14), 147 So. 3d 186, 189. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. *Id.*

The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G), which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand

and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

A challenge to a zoning decision in Louisiana is a *de novo* proceeding on the issue of whether the result of the legislation is arbitrary and capricious. *Truitt v. West Feliciana Parish Government*, 2019-0808 (La. App. 1st Cir. 2/21/20), 299 So. 3d 100, 103. It is only when an action of a zoning commission is found on judicial review to be palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power that such action will be disturbed. *City of Baton Rouge/Parish of East Baton Rouge v. Myers*, 2013-2011 (La. 5/7/14), 145 So. 3d 320, 327-28; *Our Lady of Lake Roman Catholic Church, Mandeville*, 147 So. 3d at 191; *see Dupuis v. City of New Orleans through Zoning Board of Zoning Adjustments*, 2017-0052 (La. App. 4th Cir. 8/2/17), 224 So. 3d 1046, 1049 (quotation omitted) ("Our jurisprudence indicates that 'the decisions of the [Board of Zoning Adjustments] … are subject to judicial review *only* as to whether they are arbitrary, capricious or an abuse of discretion.'").

The test of whether a zoning board's action is arbitrary and capricious is whether the action is reasonable under the circumstances. *King v. Caddo Parish Commission*, 97-1873 (La. 10/20/98), 719 So. 2d 410, 418. "A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion." *Id.* (*quoting Papa v. City of Shreveport*, 27,045 (La. App. 2nd Cir. 9/29/95), 661 So. 2d 1100, 1103, *writ denied*, 98-2634 (La. 12/11/98), 730 So. 2d 460); *Truitt*, 299 So. 3d at 103.

**Zoning**

Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities. The purpose of zoning is to reduce or eliminate the adverse effects that one type of land use might have on

7

another. *Jenkins v. St. Tammany Parish Police Jury*, 98-2627 (La. 7/2/99), 736 So. 2d 1287, 1290. Louisiana Constitution article VI, Section 17 gives local governments broad powers to adopt regulations for land use, zoning, and historic preservation. Louisiana Revised Statute 33:4780.40 also confers upon parish governments the authority to enact zoning regulations. In order to exercise these zoning powers, the governing authority of the parish must appoint a zoning commission. La. R.S. 33:4780.45.

The jurisprudence clearly states that zoning is a legislative function, the authority for which flows from the police power of governmental bodies. *King*, 719 So. 2d at 418. A zoning regulation is valid if it bears a rational relation to the health, safety and welfare of the public. All ordinances are presumed valid. *Myers*, 145 So. 3d at 327. The local government's zoning authority is delineated in La. R.S. 33:4721 *et seq.* and La. R.S. 33:4780.40 *et seq.* The governing authority may regulate and restrict the erection, construction, alteration, or use of buildings, structures, or land. La. R.S. 33:4722(A); La. R.S. 33:4780.41; *Myers*, 145 So. 3d at 328.

Louisiana Revised Statute 33:4780.46 permits a municipality to appoint a board of adjustment to hear and decide certain zoning appeals. In the present case, AT&T sought judicial review pursuant to La. R.S. 33:4780.47(A), which states:

> Any person or persons jointly or severally aggrieved by any decision by the board of adjustment relative to any officer, department, board, or bureau of the parish may present a petition to the district court of the parish in which the property affected is located. Such petition shall be duly verified, set forth that the decision is illegal, in whole or in part, and specify the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

Although La. R.S. 33:4780.47(A) refers to the board of adjustment, the City/Parish also had the authority through its enacted ordinances to establish the Board of Appeals. City/Parish Code of Ordinances, Chapter 1, Sections 8:1 and 8:2. Furthermore, acts of a local governing authority's zoning commission, board of

8

adjustment, or zoning administrator are subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, excessive use of power granted, or the denial of the right of due process. La. R.S. 33:4780.40. The Board of Appeals is also a division of the City/Parish and La. R.S. 33:4721 *et seq.* and La. R.S. 33:4780.40 *et seq.* are applicable herein.

**Small Wireless Facilities Ordinance**

AT&T first argues that the permit was originally lawfully issued to it, and therefore, should not have been revoked. The Small Wireless Facilities Ordinance Sec. 2:380(B) provides, in pertinent part:

> Intent. In enacting this Chapter, the City-Parish is establishing uniform standards to address issues presented by small wireless facilities, including without limitation, to:
>
> * * *
>
> (5) preserve the character of the neighborhoods in which facilities are installed; ...

The 2015 IBC Sec. 105.6, adopted by the City/Parish Code of Ordinances, Chapter 1, Sec. 8:1, provided:

> The *building official* is authorized to suspend or revoke a *permit* issued under the provisions of this code wherever the *permit* is issued in error or on the basis of incorrect, inaccurate or incomplete information, or in violation of any ordinance or regulation or any of the provisions of this code. (Emphasis in original).

Turning to consideration of whether the action of the Board of Appeals in affirming the Building Official was arbitrary or unreasonable, we note a *prima facie* presumption of validity attaches to a zoning board's actions. *Deer Chase, LLC v. East Feliciana Parish Police Jury*, 2017-0120 (La. App. 1st Cir. 3/9/18), 2018 WL 1282815, at *5 (unpublished) (*citing Freeman v. Kenner Board of Zoning Adjustments*, 09-1060 (La. App. 5th Cir. 4/27/10), 40 So. 3d 207, 212; *Papa*, 661 So. 2d at 1103). As we stated earlier, because zoning falls under the jurisdiction of the legislature, courts will not interfere with a zoning board's prerogative unless the

9

action is palpably erroneous and without any substantial relation to the public health, safety, or general welfare. *Deer Chase*, 2018 WL 1282815, at *5 (*citing Toups v. City of Shreveport*, 2010-1559 (La. 3/15/11), 60 So. 3d 1215, 1217; *King*, 719 So. 2d at 418). A reviewing court cannot substitute its own judgment nor interfere with a zoning decision absent a showing that the board was arbitrary and capricious or abused its discretion. *Deer Chase*, 2018 WL 1282815, at *5.

An action is "arbitrary and capricious" when it is a willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. *Id.*, 2018 WL 1282815, at *5 (*citing Toups*, 60 So. 3d at 1217); *see Truitt*, 299 So. 3d at 103. The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. *Id.*, 2018 WL 1282815, at *5 (*citing King*, 719 So. 2d at 418; *Clark v. City of Shreveport*, 26,638 (La. App. 2nd Cir. 5/10/95), 655 So. 2d 617, 622.) On appeal, a person who opposes a zoning board's decision bears the burden of proving that the decision was arbitrary, capricious and unreasonable. *Id.*, 2018 WL 1282815, at *5 (*citing Parish of Jefferson v. Davis*, 97-1200 (La. App. 5th Cir. 6/30/98), 716 So. 2d 428, 433, *writ denied*, 98-2634 (La. 12/11/98), 730 So. 2d 460). When the propriety of a zoning decision is debatable, it will be upheld. *Truitt*, 299 So. 3d at 104.

Our review of the record does not support AT&T's contention that the action of the Board of Appeals in refusing to reverse the action of the Building Official was arbitrary, capricious, and/or unreasonable. The Small Wireless Facilities Ordinance specifically requires the City/Parish to "preserve the character of the neighborhoods in which facilities are installed." Small Cell Wireless Ordinance Sec. 2:380(B)(5). The Revocation Notice stated that the permit previously issued to AT&T was being revoked pursuant to Section 105.6 of the IBC. The City/Parish and Mosely Holdings provided evidence that the permit issued to AT&T was issued in error, as it was

10

assumed that the relevant portion of Antioch Road was a publicly-owned road, rather than one subject to "certain stipulations that prevent the issuance of this permit."

Mosely Holdings and the City/Parish assert that the Long Farm PUD required that the utilities, including AT&T, be underground. The City/Parish has adopted a Unified Development Code (UDC), which establishes numerous types of zoning districts, including a PUD. UDC Sections 8.1, 8.101, and 8.216 (2014).[4] The PUD map for Long Farm specifically states that phone service will be provided by "AT&T via underground conduits and wiring." The UDC Section 8.216 (2014), provides with regards to PUDs as follows:

> E. Relation to Zoning Districts. An approved Planned Unit Development shall be considered to be a separate zoning district in which the Development plan, as approved, establishes the restrictions and regulations according to which Development shall occur, and may depart from the normal procedures, standards, and other requirements of the other sections of the zoning ordinance and subdivision regulations to the extent provided herein. Upon approval, the official zoning map will be changed to indicate the area as Planned Unit Development Concept (or "PUD CONCEPT") (for PUD only), or if final approval is granted then as Planned Unit Development (or "PUD"). Every approval of a Planned Unit Development (PUD, SPUD, or ISPUD) **shall be considered an amendment to the zoning ordinance**. (Emphasis added).

The donated property is subject to the PUD, which establishes the zoning restrictions, and requires AT&T provide its services "via underground conduits and wiring."

AT&T also claims that the PUD map refers to "phone" service being underground and does not apply to "wireless" service. We note that the PUD map refers to utilities and specifically lists electric service by Entergy, phone service by AT&T, and cable service by Cox Communications all being provided via

---

[4] Chapter 8 of the UDC was amended by City/Parish Ordinance No. 17892 in August 2020 after the application for the permit was filed. Although the plan of government, which includes the UDC, has not been filed in the record, this court may take judicial notice of its provisions under the authority of La. R.S. 13:3712(B). *In re Fontenot*, 2014-0337 (La. App. 1st Cir. 12/30/14), 2014 WL 7455199, at *5 n.2 (unpublished) (*citing City of Baton Rouge v. Bethley*, 2009-1840 (La. App. 1st Cir. 10/29/10), 68 So. 3d 535, 539 n.3, *writ denied*, 2011-1884 (La. 11/4/11), 75 So. 3d 927).

11

underground conduits and wiring for Long Farm. We find that the PUD restrictions required AT&T utilities be provided via underground conduit and wiring and provided no exception for a wireless cell tower. Therefore, we agree that the Building Official originally issued the permit in error as it conflicted with the PUD.

The Small Cell Wireless Ordinance Section 2:382(D)(4) requires that "[a] small wireless facility shall comply with all applicable codes." Given the zoning regulations established in the PUD, we cannot say that the Board of Appeals acted arbitrarily or capriciously in determining that the Building Official issued the permit to AT&T in error. Therefore, the Building Official had the authority to revoke the erroneously issued permit. *See Deer Chase*, 2018 WL 1282815, at \*4-5.

**Declaration of Covenants, Conditions, and Restrictions for Long Farm Subdivision**

AT&T asserts that this court should recognize that the Long Farm Restrictions require utilities to be placed underground "whenever reasonably possible." AT&T further contends that it believed that the Revocation Notice was referring to the Long Farm Restrictions, not the PUD, and that the PUD has no application to this permit. While AT&T quotes to a section of the Long Farm Restrictions in both its petition and its brief, the Long Farm Restrictions are not contained in the record before us. The PUD map in the record contains the language that AT&T is required to provide phone services "via underground conduits and wiring." An appellate court has no authority to consider on appeal facts referred to in briefs that are outside the record. La. C.C.P. art. 2164; *Kott v. Kott*, 2020-0873 (La. App. 1st Cir. 4/16/21), 324 So. 3d 165, 173. We are, therefore, unable to address the argument pertaining to the Long Farm Restrictions referred to by AT&T that are not in the record.

**Dedication of Antioch Road**

AT&T claims that the Antioch location was donated or dedicated to the City/Parish, and once completed, it became public property. On August 4, 2014,

12

Mosely Holdings executed the Donation donating certain property to the City/Parish. AT&T argues that the language of the Donation states that the parties to the agreement "acknowledge that full ownership to the Donation Parcel comprising the right of way is conveyed herein." (Emphasis in original). AT&T contends that the Donation Parcel to the City/Parish was made "without reserving any right of ownership." AT&T further maintains that the Donation Parcel became public, and therefore, the Building Official had no reason to revoke the permit.

AT&T directs this court's attention to *Anderson v. Police Jury of East Feliciana Parish*, 452 So. 2d 730 (La. App. 1st Cir.), *writ denied*, 457 So. 2d 13 (La. 1984), claiming that once a property is dedicated to a political subdivision, the City/Parish, it becomes a public thing, not merely a private thing subject to public use. In *Anderson* a servitude of passage was granted to the police jury over a piece of property to establish a public road. The widow of Mr. Anderson later erected a fence across the road in question, claiming that the police jury had abandoned the road. *Id.* at 732. The issue before the court was whether the formal dedication of the road was ever revoked, which the court found had not occurred. Therefore, the court found the road to be a public thing. *Id.* at 735-36.

*Anderson* is distinguishable from the present case. *Anderson* specifically noted that while a formal dedication took place, for its purposes it did not need to determine whether ownership was transferred or only a servitude. *Id.* at 734-35. Instead, the issue in *Anderson* was whether the formal dedication had been revoked. *Id.* at 735-36. Furthermore, *Anderson* did not involve a piece of property that was already encumbered with certain zoning regulations.

By its terms, the Donation specifically transferred the Donation Parcel to the City/Parish in full ownership. However, the Donation contained the following restricting language:

13

**1.2 Purpose.** The donation and dedication of the Donation Parcel is for the purpose of completing the extension of Antioch Road, consisting of construction of a roadway and all necessary curbing, medians, sidewalks and shoulder, *but for no other purpose.*[5] (Emphasis added).

In addition to transferring the Donation Parcel, the Donation created and granted sloping servitudes on either side of the roadway necessary for drainage. With regard to these servitudes, the Donation required the following:

**2.2 Restrictions on Activities**

(a) **Compliance with Laws**. Each Party shall comply with all federal, state and local laws, ordinances, rules and regulations (collectively, "**Laws**") that apply to the property owned by such Party and the activities on such property, ….

As we set forth earlier, UDC Section 8.216(E) (2014) provides that the approval of a PUD "shall be considered an amendment to the zoning ordinance." The presumption of validity attached to zoning ordinances is a well-established principle of law in Louisiana. *Freneaux v. Shelton*, 2016-0694 (La. App. 1st Cir. 7/19/17), 2017 WL 3083662, at *8 (unpublished), *writ denied*, 2017-1433 (La. 11/6/17), 229 So. 3d 471; *see Myers*, 145 So. 3d at 327. Whether an ordinance bears the requisite relationship to the health, safety, and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well-founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld. The interpretation of municipal authorities with respect to a municipal zoning ordinance is entitled to great weight. *Freneaux*, 2017 WL 3083662, at *8 (*citing Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish*, 561 So. 2d 482, 492 (La. 1990)). Additionally, once an area has been zoned for a specified purpose, it is restricted in use to whatever use is set out in that

---

[5] AT&T argues that the "no other purpose" clause in the Donation is not enforceable under the general law and relies on *State, Department of Transportation & Development v. Richardson*, 453 So. 2d 572, 576 (La. App. 1st Cir. 1984). However, we have determined that the PUD restricted the utilities to be underground without reliance on the language of the Donation. Therefore, we pretermit any discussion as to the "no other purpose" clause in the Donation.

classification. *Terrebonne Parish Consolidated Government v. Carter*, 2019-1390 (La. App. 1st Cir. 9/18/20), 313 So. 3d 1016, 1021. The use may only be changed if the area is rezoned. *Kirk v. Town of Westlake*, 387 So. 2d 1157, 1159 (La. 1980); *Lake Forest, Inc. v. Board of Zoning Adjustments of City of New Orleans*, 487 So. 2d 133, 135 (La. App. 4th Cir.), *writ denied*, 496 So. 2d 1030 (La. 1986).

Similar to *Carter*, no evidence has been presented in the instant case that the zoning regulations, contained in the PUD, were not valid or not applicable to the Donation Parcel. *Carter*, 313 So. 3d at 1021 (*citing Myers*, 145 So. 3d at 327 ("All ordinances are presumed valid[.])"). Therefore, the City/Parish was required to comply with the local zoning regulations when it received the Donation Parcel. The Donation Parcel was encumbered with the zoning regulations contained in the PUD, which required AT&T's services to be provided "via underground conduits and wiring." AT&T has directed this court to no cases that would allow the City/Parish to avoid enforcing its own zoning regulations simply because the City/Parish became the owner of the Donation Parcel.

Furthermore, the Donation contained other restricting language, including:

**2.5 Not a Public Grant; No Third Party Beneficiaries.** The Servitudes granted herein in favor of the City-Parish *are not dedicated to the public, but are private, personal rights of use* granted solely for the purposes and subject to the terms and conditions set forth in this Donation. There are no third party beneficiaries to this Donation.

\* \* \*

**3.5 No Other Rights Granted.** Notwithstanding anything in this Donation to the contrary, except as expressly granted herein, the Parties intend that no vendor's lien, and/or privilege, mortgage, encumbrance, burden, resolutory condition, right of recission or stipulation for the benefit of the City-Parish or any third party shall be created by this Donation and, should any be deemed to have been created, they are hereby expressly released, renounced, waived and abandoned. (Italics added).

AT&T is a third-party, as it was not a party to the Donation between Mosely Holdings and the City/Parish. The Donation specifically states that the servitudes

"are not dedicated to the public" and that there "are no third party beneficiaries to this Donation."

Despite the Donation of the Antioch Road location to the City/Parish, the Donation Parcel is still subject to the zoning regulations of that property, which include the PUD. The PUD contains no exception for a wireless cell tower. AT&T has offered no statutory or case law supporting its proposition that the zoning regulations were altered by the Donation of the property or the granting of the servitudes contained in the Donation. Therefore, we do not find that the City/Parish's enforcement of the PUD was arbitrary and capricious.

**No Vested Property Rights in Permit**

AT&T asserts that it obtained a vested property right in the permit since it had already installed the cell tower relying on *Dunn v. Parish of Jefferson*, 256 So. 2d 664 (La. App. 4th Cir.), *writ denied*, 258 So. 2d 382 (La. 1972). *Dunn* forbids a permit to be *arbitrarily* revoked, especially when the owner has incurred substantial expense. *Dunn*, 256 So. 2d at 667. Later cases have declined to extend *Dunn*, wherein the permit was properly issued, to cases where the permit was issued in error. *Pailet v. City of New Orleans, Department of Safety & Permits*, 433 So. 2d 1091, 1095-96 (La. App. 4th Cir.), *writ denied*, 440 So. 2d 757 (La. 1983); *see Brennan v. Board of Zoning Adjustments of City of New Orleans*, 371 So. 2d 324, 326 (La. App. 4th Cir. 1979) ("when a building permit is issued in error, the licensee does not acquire a vested property right in such permit"). Furthermore, this court has previously stated "that a party can acquire vested rights only in a *validly issued* building permit." *Deer Chase*, 2018 WL 1282815, at * 7 (emphasis in original).

In *Deer Chase*, 2018 WL 1282815, at * 4, this court extensively analyzed cases in which a planning or zoning commission committed error and revoked an approved building permit. This court noted that a planning commission has the right to revoke an erroneously approved subdivision map in the exercise of its legislative

16

authority. *Id.* Furthermore, after analyzing numerous cases from other circuits, this court determined that a permit issued in error "does not vest an irrevocable right to proceed under that permit contrary to subsequent action cancelling the permission previous[ly] granted." *Id.* (*quoting Nassau Realty Co. v. City of New Orleans*, 221 So. 2d 327, 330 (La. App. 4th Cir. 1969)); *see also 7004 St. Charles Avenue Corp. v. City of New Orleans*, 97-0299 (La. App. 4th Cir. 12/10/97), 704 So. 2d 909, 911, *writ denied*, 98-0036 (La. 3/13/98), 712 So. 2d 881 (An erroneously issued permit does not gain legal status simply by virtue of its issuance.); *Ellsworth v. City of New Orleans*, 2013-0084 (La. App. 4th Cir. 7/31/13), 120 So. 3d 897, 907; *Cross v. City of New Orleans*, 446 So. 2d 1253, 1254 (La. App. 4th Cir.), *writ denied*, 449 So. 2d 1359 (La. 1984) (A zoning authority has the right to cancel or revoke a building permit erroneously issued as a result of a mistake of fact or law, either because the permit did not comply with zoning regulations or because the permit was approved based on a misrepresentation made by the property owner.); *Summerchase Ltd. Partnership I v. City of Gonzales*, 970 F. Supp. 522, 534 (M.D. La. 1997).

The instant case is distinguishable from *Dunn* because we have determined that the permit was improperly issued. Additionally, AT&T's reliance on the issuance of the permit was unjustified because AT&T was aware prior to the installation of the cell tower that the Antioch location was subject to certain restrictions. Prior to the issuance of the permit, the City/Parish provided a letter dated August 21, 2018, informing AT&T that the review of the permit did not authorize a deviation from any "adopted/mandated codes, rules and regulations in accordance with Title 8 of the Code of Ordinances" for the City/Parish. Furthermore, the affidavit of Russell L. Mosely set forth that on November 17, 2018, approximately thirteen months before the December 2019 installation, he gave a contractor for AT&T verbal notice that the PUD required underground conduits and wiring and that the cell tower was in violation of the PUD. Mr. Mosely also set forth

17

by affidavit that Beau Barbera, an engineer employed by Mr. Mosely, gave verbal notice on two occasions to AT&T that the cell tower violated the PUD. Mr. Barbera also gave AT&T written notice in November 2018 that its service was required to be underground.

Through her affidavit, Karen Douglas, a Senior Project Manager for MasTec Network Solutions, the contractor for AT&T, stated that Mr. Mosely had stopped the contractors from performing the work on Antioch Road. She thereafter spoke to David Cobb, a Building Official for the City/Parish, who informed her that the cell tower was located in the right-of-way belonging to the City/Parish and was not subject to the restrictions asserted by Mr. Mosely. Ms. Douglas also asserted that Mr. Cobb informed her that the cell tower's location was proper. AT&T subsequently modified the pole of the cell tower from a wooden one to a 40-foot metal pole, which was approved by Mr. Cobb and installed in December 2019. Mr. Cobb countered in his affidavit that he had no recollection of informing Ms. Douglas or any other person that the cell tower was not subject to the restrictions asserted by Mr. Mosely or that the cell tower's location was permitted. Furthermore, emails between Mr. Cobb and AT&T representatives appear to confirm that Antioch Road is a City/Parish street, but not that the cell tower can be located at a certain location. Although the permit was issued on October 3, 2018, the cell tower was not installed at the Antioch location until December 2019. AT&T was notified that the cell tower violated the PUD. Furthermore, the Small Wireless Facilities Ordinance Section 2:385(A) specifically prevents the creation of a property right as follows:

> Authority Granted; No Property Right or Other Interest Created. A permit from the City-Parish authorizes an applicant to undertake only certain activities in accordance with this Chapter, and does not create a property right or grant authority to the applicant to impinge upon the rights of others who may already have an interest in the rights-of-way.

Therefore, we find AT&T had no reasonable justification in relying on the permit and no vested property right in the permit. *See Pailet*, 433 So. 2d at 1095-96.

18

**Alleged Violation of Law**

AT&T further maintains that the revocation of the permit violated La. R.S. 9:1253, La. R.S. 45:781, 47 U.S.C. 253(a). Louisiana Revised Statute 9:1253 provides:

> Any road or street which becomes a public road or street under R.S. 48:491(B) shall be subject to a servitude of public transportation and utility running in favor of the parish or municipality in which the road or street is located. This servitude shall extend directly above and below the surface of the public road or street and shall grant to the governing authority of the parish or municipality and any public utility authorized by such governing authority the right to construct and maintain all public utilities, including but not limited to, the right to lay water lines, natural gas lines, sewerage lines, and electrical, telecommunications, and cable television lines.

Louisiana Revised Statute 9:1253 addresses the right of a municipality to authorize installation of public utilities "directly above and below the surface of the public road or street...." AT&T does not attempt to locate its cell tower either above or below the surface of Antioch Road but in the right-of-way next to the roadway. Furthermore, we agree with both the City/Parish and Mosely Holdings that La. R.S. 9:1253 generally gives the City/Parish the authority to grant a servitude for public utilities but does not mandate that AT&T be given the right to choose the placement of the cell tower.

Louisiana Revised Statute 45:781(A) provides, in part:

> Corporations, domestic or foreign, formed for the purpose of transmitting intelligence by telegraph or telephone or other system of transmitting intelligence, may construct and maintain telegraph, telephone or other lines necessary to transmit intelligence along all public roads or public works, and along and parallel to any of the railroads in the state, and along and over the waters of the state, if the ordinary use of the roads, works, railroads, and waters are not obstructed, and along the streets of any city, **with the consent of the city council or trustees.** (Emphasis added).

AT&T argues that it is entitled to install and operate its cell tower in the right-of-way pursuant to La. R.S. 45:781(A). The language of La. R.S. 45:781(A) uses the permissive word "may" and unambiguously requires the consent of the city council

19

to place utilities in the right-of-way. AT&T also maintains that there are other above-ground utilities at the Antioch Road location and these permits have not been revoked. Other than photographs reflecting the presence of a power transformer in proximity to the wireless cell tower, the record is devoid of facts concerning the placement of other above ground utilities and/or their use in support of the underground utility requirement. The City/Parish in the present case revoked the permit when it was determined that the Antioch Road location was burdened by certain restrictions. The revocation did not violate La. R.S. 45:781(A).

AT&T also asserts that 47 U.S.C. § 253(a) prevents the limitation of its right to use the right-of-way. 47 U.S.C. § 253(a) provides:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

However, AT&T does not address 47 U.S.C. § 253(c), which provides:

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253(c) clearly provides the City/Parish the right to manage the public right-of-way. Furthermore, as noted by Mosely Holdings, negotiations did take place with AT&T to attempt to relocate the cell tower to other nearby locations.

We find that the Building Official did not violate any law in revoking the permit that was granted based upon the failure to recognize that the PUD restricted AT&T to underground utilities. Furthermore, the law allows the City/Parish the right to manage the right-of-way and allows a Building Official to revoke a permit issued in error. 2015 IBC Sec. 105.6. Therefore, the action of the Board of Appeals in affirming the revocation of the permit was neither arbitrary nor capricious.

20

**CONCLUSION**

For the reasons set forth above, the October 20, 2020 judgment of the district court denying the Petition for Judicial Review and Injunctive Relief and dismissing New Cingular Wireless, PCS, LLC d/b/a AT&T Mobility's claims is affirmed. All costs are assessed against New Cingular Wireless, PCS, LLC d/b/a AT&T Mobility.

**AFFIRMED.**